

# In the Missouri Court of Appeals
# Eastern District
## DIVISION THREE

| | | |
|---|---|---|
| WILLIAM NORATH, | ) | No. ED103441 |
| | ) | |
| Appellant, | ) | Appeal from the Labor and Industrial |
| | ) | Relations Commission |
| vs. | ) | |
| | ) | |
| DIVISION OF EMPLOYMENT SECURITY, | ) | |
| | ) | |
| Respondent. | ) | Filed: May 31, 2016 |

## OPINION

William Norath appeals from the Labor and Industrial Relations Commission's

("Commission") determination that he was overpaid unemployment benefits and that he willfully

and fraudulently failed to report to the Division of Employment Security ("Division") wages he

had earned. Because we find that the Commission failed to address certain factual issues

essential to our review, we reverse and remand for proceedings consistent with this opinion.

### Factual and Procedural Background

In April 2009, Norath started working for Hackmann Lumber Company ("Hackmann").

Norath worked directly with prospective customers of Hackmann and attempted to generate sales

orders of Hackmann lumber and material. Norath was paid a commission by Hackmann in the

event Hackmann made a profit from the sales generated by Norath. Hackmann paid Norath as an

employee and not as an independent contractor.

While Norath was working for Hackmann, Norath was receiving unemployment benefits as a result of becoming unemployed from a prior job. The record is unclear when Norath began receiving those unemployment benefits and from which job Norath had become unemployed.

During the time that Norath worked for Hackmann, Norath continued to submit claims to the Division, and to collect unemployment benefits from time to time. On the weeks that he was paid by Hackmann, Norath reported to the Division that he was working and reported those wages. But on the weeks Norath did not receive any income from Hackmann, he reported that he was not working and that he had no wages, although he may have been performing tasks in connection with the prospective Hackmann customers to which he was attempting to generate sales.

Norath received $320 of unemployment benefits each week he reported that he was not working. Norath did not receive any unemployment benefits the weeks he reported that he had been paid because his wages exceeded his weekly benefit amount plus twenty percent. See § 288.030.1.(28)(b)b.[1]

The Division conducted an audit and determined that Norath had been overpaid unemployment benefits because he was in fact working when he reported that he was not working. A deputy for the Division concluded that Norath had been overpaid benefits for thirty-eight weeks during 2013 and 2014 for a total overpayment of $10,029. Because the deputy found that Norath was overpaid due to fraud, Norath was also assessed a statutory penalty of $2,507.25, which represents twenty-five percent of the amount owed. Thus, the deputy determined that Norath owed the Division a total of $12,536.25.

---

[1] All statutory references are to RSMo 2000 unless otherwise indicated.

Norath appealed these determinations. A telephonic appeal hearing was held. Norath appeared pro se and testified at the hearing and an employee for the Division appeared and testified based on business records. The business records consisted of the Division's own records and those records it had obtained from Hackmann and from Norath during its audit.

Norath testified that as part of his job with Hackmann he solicited lumber and materials orders for Hackmann, and if the customer ultimately bought and paid for the order, he was paid a percentage of the profits Hackmann earned. He testified he had no way of estimating what his pay would be for each order because he did not know what percentage Hackmann was marking up the prices or whether Hackmann was going to give any discounts. Norath testified that he answered "no" to the question of whether he was working each week because he did not believe that he was doing any work for them until the day the order was delivered and Hackmann was paid.

The Division witness testified that the deputy took the daily breakdown of wages provided by Hackmann to determine Norath's wages and any overpayment he had received. She testified that all wages earned, including commissions, had to be reported during the week in which the work was actually performed. She explained that when a claimant is unsure of the amount of his or her commission, the Division instructs the claimant to over-report the amount of wages so as to avoid an overpayment of unemployment benefits. She testified that if the wages turn out to be less than the claimant reports, then the Division will recalculate the amount owed and pay the claimant the additional benefits that are due. She did not explain how the deputy determined Norath's daily wages from Hackmann's records.

3

The appeals tribunal affirmed the deputy's decisions. Norath appealed the appeals tribunal's decisions to the Commission and the Commission affirmed the appeals tribunal. This appeal follows.

## Standard of Review

We review the Commission's decision to determine whether it is "supported by competent and substantial evidence upon the whole record." MO. CONST. art. V, § 18. We must affirm the Commission's decision unless (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) the record lacks sufficient competent evidence to support the award. § 288.210.

## Missouri Employment Security Law

The purpose of the employment security law is to provide benefits to persons unemployed through no fault of their own. *Gen. Motors Corp. v. Buckner*, 49 S.W.3d 753, 756 (Mo.App.E.D. 2001). Section 288.020 requires us to liberally construe the law to promote employment security by providing for the payment of compensation to individuals in respect to their unemployment. To this end, the law is liberally construed in favor of compensation and disqualifying provisions are strictly construed. *Anchor Sales & Serv. Co., Inc. v. Div. of Emp't Security*, 945 S.W.2d 66, 70 (Mo.App.W.D. 1997). Nevertheless, it is the claimant's burden to establish a right to unemployment benefits. *Coday v. Div. of Emp't Security*, 423 S.W.3d 775, 781 (Mo.banc 2014).

The law applies to individuals who are totally unemployed and partially unemployed. § 288.060. An individual is "totally unemployed" in any week during which the individual performs no services and with respect to which no wages are payable to such individual. §

4

288.030.1.(28)(a). An individual is "partially unemployed" in any week of less than full-time work if the wages payable to such individual for such week do not equal or exceed the individual's weekly benefit amount plus twenty dollars or twenty percent of his or weekly benefit amount, whichever is greater. § 288.030.1.(28)(b)b. An eligible insured worker who is partially unemployed in any week shall be paid for such a week a partial benefit. § 288.060.3. Such partial benefit shall be an amount equal to the difference between the weekly benefit amount and that part of his or her wages in such week in excess of twenty dollars or twenty percent of his or her weekly benefit amount, which is greater. § 288.060.3.

The purpose of these provisions is to provide minimal basic support to wage earners whose wages have been terminated or sharply reduced because of unemployment. *Buckner*, 49 S.W.3d at 756. Unemployment compensation is not intended to provide supplemental income to persons who continue to receive their full wages through some other means. *Id.* An individual who spends his full time in any endeavor entered in an attempt to produce an income cannot be said to be unemployed. *Bryant v. Labor & Indus. Relations Comm'n*, 608 S.W.2d 524, 529 (Mo.App.W.D. 1980).

Section 288.200 requires the Commission to issue a decision and "its reasons therefor." The decision need not be in any particular form, but must provide for the intelligent review of the decision and reveal a reasonable basis for the Commission's decision. *Garden View Care Ctr., Inc. v. Labor & Indus. Relations Comm'n*, 848 S.W.2d 603, 608 (Mo.App.E.D. 1993). There cannot be intelligent review of the decision when the Commission fails to address essential factual issues. *Wooden v. Div. of Emp't Security*, 341 S.W.3d 770, 774 (Mo.App.W.D. 2011). When the Commission fails to address essential factual issues, its decision must be reversed and

5

the cause remanded so that the Commission can resolve the essential issues. *Dolgencorp, Inc. v. Zatorski*, 134 S.W.3d 813, 820 (Mo.App.W.D. 2004).

## Discussion

### I.    The Commission failed to address Norath's employment status.

The Commission failed to make a finding regarding whether Norath was working for Hackmann part-time, full-time, or not at all during the weeks at issue. In fact, Norath's employment status was not addressed at all during the hearing. Nevertheless, the record demonstrates that Norath had been working for Hackmann since April 2009, serviced twenty-nine different accounts for Hackmann, and made over $36,000 in 2013 and over $34,000 in 2014 for his work for Hackmann.

Unemployment income is not intended to provide supplemental income to persons who receive their full wages through some other means. *Buckner*, 49 S.W.3d at 756. Moreover, the amount of unemployment benefits to which a claimant may be entitled to depends in part on whether the claimant was working full-time, part-time, or not at all. Since the Commission failed to make a finding on Norath's employment status, the Commission's decision must be reversed and remanded so that evidence can be taken and a finding made with regard to whether Norath was working part-time, full-time, or not all for Hackmann during the weeks at issue. See *DeLong's, Inc. v. Div. of Emp't Security*, 927 S.W.2d 877, 880-81 (Mo.App.W.D. 1996) (reversing and remanding for further proceedings to determine whether the claimant was self-employed and therefore not entitled to unemployment benefits where claimant was pursuing an independent accounting practice and this issue of fact was not addressed by the Commission).

6

## II. The Commission failed to establish when Norath earned his wages from Hackmann.

This case must be reversed and remanded for another reason. If it is determined that Norath was working part-time or full-time for Hackmann during the time periods at issue, then the Commission will have to determine whether Norath was overpaid. In order to make that determination, the Commission must first determine when Norath's wages were earned, and the Commission failed to make a finding regarding this essential factual issue in its decisions.

For purposes of unemployment claims, "wages" means all remuneration, *payable or paid*, for personal services including commissions and bonuses. § 288.036.1 (emphasis added). Wages reduce unemployment benefits when they are earned, regardless of when they are paid. *Coday*, 423 S.W.3d at 780 (citing § 288.036.1). "Payable" has been defined as follows: "A sum of money is said to be payable when a person is under an obligation to pay it." *Buckner*, 49 S.W.3d at 757 (citing BLACK'S LAW DICTIONARY 1128 (6th ed. 1990)); *Higgins v. Missouri Div. of Emp't Secuirty*, 167 S.W.3d 275, 282 (Mo.App.W.D. 2005) (same). Thus, to be "payable" as used in the context of wages, there must be some legal obligation on the part of the employer to pay the employee. *Bucker*, 49 S.W.3d at 757.

Here, it is unclear from the record how the Commission calculated Norath's wages and the Commission failed to make the essential factual finding regarding how it determined Norath's wages, i.e., the date the wages became payable. Without this factual determination, we are unable to meaningfully review the Commission's decision, and as a result, its decision must be reversed and the cause remanded so that the Commission can resolve this issue. *Zatorski*, 134 S.W.3d at 820.

7

On remand, the Commission should explain its wage calculations. Simply adopting the deputy's calculations without a sufficient explanation in the record for how these calculations were made does not provide for meaningful appellate review. Given that the Commission's fraud findings were dependent at least in part on its determination that Norath was overpaid unemployment benefits, we request the Commission to reconsider this issue after making the requisite factual findings and giving due consideration to any new evidence presented on this issue. If the Commission again finds that Norath was overpaid due to fraud, the Commission should provide its reasons therefor.

## Conclusion

For the reasons stated above, we reverse and remand for proceedings consistent with this opinion.

_____
James M. Dowd, Judge

Robert M. Clayton III, P.J., and
Lawrence E. Mooney, J., concur