**CON–WAY TRUCKLOAD, INC., Appellant,**

v.

**James WOOD and Division of Employment Security, Respondents.**

**WD 79858**

Missouri Court of Appeals, Western District.

OPINION FILED: February 28, 2017

Ronald G. Sparlin, Joplin, MO, for appellant.

Mandolin Jackson, Jefferson City, MO, for respondent.

Before Division Two: Cynthia L. Martin, Presiding Judge, Lisa White Hardwick, Judge and Alok Ahuja, Judge

Cynthia L. Martin, Judge

Con–Way Truckload, Inc. ("Con–Way") appeals from the Labor and Industrial Relations Commission's ("Commission") decision awarding unemployment benefits to James Wood ("Wood"). Con–Way argues that the facts found by the Commission do not support the award and that there was not sufficient competent evidence in the record to support the award because the evidence indicated that Wood was discharged for misconduct connected with his work as described in section 288.050.2,[1] disqualifying him from receiving unemployment benefits. We affirm the Commission's decision that Wood did not commit misconduct as defined by section 288.030.1(23)(a) and (b). However, because the Commission did not address whether Wood committed misconduct as defined by section 288.030.1(23)(e), an issue that was fairly before the Commission for decision, we reverse the conclusion that Wood is entitled to receive unemployment benefits and remand for further findings and conclusions.

---

1. All statutory references are to RSMo 2000 as supplemented through the date of Wood's discharge from employment unless otherwise noted.

## Factual and Procedural Background

Wood began working for Con–Way on October 7, 2010, as an over-the-road truck driver. On April 6, 2016, Wood accepted a load of an environmentally hazardous liquid for shipment in Pennsylvania. Wood testified that he strapped the load down according to company policy and starting driving toward his destination. Shortly after he began driving, Wood reached a highway entrance ramp. Wood misjudged the corner, taking it at a higher rate of speed than his load would allow, and overturned the truck and trailer. Con–Way formally terminated Wood's employment on April 7, 2016.

Wood applied for unemployment benefits on April 14, 2016. Con–Way contested the application, and asserted that Wood was terminated for misconduct connected with work. In particular, Con–Way stated that "Wood failed to maintain control of assigned tractor, overturned the assigned tractor or trailer, and failed to maintain a satisfactory safety record which are grounds for automatic discharge pursuant to ... [the] Employee Handbook." Con–Way attached a copy of the employee handbook to its protest letter and made reference to three provisions set forth in written employee conduct policies. The relevant employee conduct policies provide:

Examples for Automatic Discharge:

The following are merely illustrative, not exclusive, of those activities that may result in automatic discharge. Automatic discharge may occur for any reason listed below as a commission or omission:

. . . .

14. Overturning the assigned tractor or trailer.

. . . .

17. Unacceptable pattern or history of unsafe driving, including but not limited to third (3rd) party complaints, moving violations, crashes, or CSA scores in excess of prescribed thresholds.

. . . .

30. Failure to maintain control of the assigned tractor.

Con–Way's letter also referred to ten other accidents in which Wood had been involved while employed by Con–Way. Con–Way's letter indicated that Wood had been warned "that further disciplinary action up to and including discharge would occur if he had more crashes or acts of [an] unsafe nature." Con–Way alleged that Wood's accident on April 6, 2016, was because Wood "was driving to [sic] fast on an enter [sic] ramp to the highway. He was given a [sic] unsafe speed ticket for this accident."

The deputy determined that Wood was disqualified from receiving unemployment benefits because Con–Way discharged Wood for misconduct connected with work. In particular, the deputy indicated that a denial of benefits was appropriate because Wood "was discharged because he was involved in an accident" as a result of "driving too fast."

Wood appealed the deputy's determination to the Appeals Tribunal, arguing that the accident was not his fault because the load had shifted due to the shipper's negligence, and arguing that there was no proof that he was speeding. The Appeals Tribunal held a telephone hearing in which the referee described the issue as whether "[Wood] left work voluntarily or was discharged," and if Wood was discharged, whether the discharge was for misconduct or not. The Appeals Tribunal heard testimony from a Con–Way human resources associate, a Con–Way safety analyst, and Wood. The Con–Way safety analyst testified that when Wood reported the accident, he stated that he "took [the entrance ramp] too fast" though he did not know his exact speed. Wood denied making this statement and testified that he was only

traveling 20–25 miles per hour at the time of the accident. Wood testified that his load shifted, causing the accident.

The Appeals Tribunal issued its decision reversing the deputy's determination and concluding that Wood was not disqualified from unemployment benefits. The Appeals Tribunal found that Con–Way's employee conduct policy, of which Wood was aware, provided that "overturning the assigned tractor or trailer, having an unacceptable pattern or history of unsafe driving, including crashes and moving violations, or failing to maintain control of the assigned tractor were grounds for automatic discharge." The Appeals Tribunal found that Con–Way discharged Wood "for speeding and overturning a vehicle in violation of the aforementioned policies." The Appeals Tribunal found Wood's statement just after the April 6, 2016 accident indicating that "I just took it too fast," though he did not remember his speed, to be more credible than Wood's telephone conference testimony that he was only going 20–25 miles per hour when his load shifted, causing the accident. The Appeals Tribunal noted that although Wood told Con–Way just after the accident that "the police were going to mail him a ticket for going an unsafe speed," Wood never received any tickets relating to the accident. Finally, the Appeals Tribunal found that Wood had received eight write-ups for safety issues between January 30, 2011, and December 7, 2015.

The Appeals Tribunal then considered whether Wood was discharged for misconduct connected to work. After setting forth the definition of "misconduct" found at section 288.030.1(23), and applicable when Wood was discharged, the Appeals Tribunal concluded that Con–Way failed to meet its burden to prove that Wood knowingly disregarded Con–Way's interest or policies as would be required by section 288.030.1(23)(a) when he drove too fast on the highway entrance ramp. The Appeals Tribunal concluded that Wood's "taking the turn onto the entry ramp too fast was at most a matter of poor judgment in handling the tractor-trailer" so that Wood's "lack of knowledge negates misconduct." The Appeals Tribunal also concluded that Con–Way failed to establish that Wood "engaged in carelessness or negligence in such a degree as to manifest culpability, wrongful intent or a knowing disregard of [Con–Way's] interest or [Wood's] duties and obligations to [Con–Way]" as would be required by section 288.030.1(23)(b). The Appeals Tribunal found that Con–Way did not provide "competent and substantial evidence that [Wood's] accident on April 6, 2016, was more than simple negligence," or that Wood's "safety history involved more than two recurring episodes of careless [sic] or negligence, which were distant in time from the final incident." The Appeals Tribunal concluded that Wood was not discharged for misconduct connected with work, and awarded Wood unemployment compensation. The Appeals Tribunal did not address, however, whether Con–Way established that Wood was discharged for misconduct for violating an employer's rule, the subject of section 288.030.1(23)(e).

Con–Way appealed the Appeals Tribunal's decision to the Commission. The Commission found that the Appeals Tribunal's decision was "fully supported by the competent and substantial evidence on the whole record" and concluded that the decision was "in accordance with the relevant provisions of the Missouri Employment Security Law." The Commission adopted the Appeals Tribunal's decision as its own without modification.

Con–Way appeals. The Division of Employment Security ("Division") filed a brief

responding to Con–Way's appeal. Wood did not respond.

## Standard of Review

Section 288.210 governs appellate review of the Commission's decision in an unemployment compensation case. *Piloski v. Div. of Emp't Sec.*, 503 S.W.3d 253, 258 (Mo. App. W.D. 2016). We "may modify, reserve, remand for rehearing, or set aside the decision of the commission on the following grounds and no other: ... the facts found by the commission do not support the award; or ... there was no sufficient competent evidence in the record to warrant the making of the award." Section 288.210. "Our review 'must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence.'" *Piloski*, 503 S.W.3d at 258 (quoting *Sheridan v. Div. of Emp't Sec.*, 425 S.W.3d 193, 198 (Mo. App. W.D. 2014)). We defer to the Commission on "issues involving the credibility of witnesses and the weight given to testimony." *Esquivel v. Hy–Vee, Inc.*, 498 S.W.3d 832, 835 (Mo. App. W.D. 2016). "While we give deference to the Commission's findings of fact, we are 'not bound by the Commission's conclusions of law or the Commission's application of law to the facts.'" *Piloski*, 503 S.W.3d at 258 (quoting *Timberson v. Div. of Emp't Sec.*, 333 S.W.3d 30, 32 (Mo. App. W.D. 2010)). Thus, "[w]hether the Commission's findings support the conclusion that a claimant engaged in misconduct connected with his or her work is a question of law' and reviewed *de novo*." *Esquivel*, 498 S.W.3d at 835 (quoting *Fendler v. Hudson Servs.*, 370 S.W.3d 585, 588–89 (Mo. banc 2012)).

When the Commission adopts the findings of the Appeals Tribunal, we necessarily examine those findings in our review of the Commission's decision. *Esquivel*, 498 S.W.3d at 835.

## Analysis

Con–Way argues that the Commission erred in awarding Wood unemployment compensation because the facts found by the Commission do not support the award and because there was not sufficient competent evidence to warrant making the award. Specifically, Con–Way contends that the evidence established that Wood was discharged for misconduct as a matter of law because he violated an employer rule, as specified in section 288.030.1(23)(e). Con–Way alternatively argues that the Commission's findings that it failed to sustain its burden to establish misconduct as specified by section 288.030.1(a) and (b) are in error.

Section 288.050.2 provides, in relevant part:

If a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work, such claimant shall be disqualified for waiting week credit and benefits, and no benefits shall be paid nor shall the cost of any benefits be charged against any employer for any period of employment within the base period until the claimant has earned wages for work insured under the unemployment laws of this state or any other state as prescribed in this section.

"'Though the claimant has the burden of proving his right to receive unemployment benefits in the first instance, the employer bears the burden of proving that the applicant is ineligible because he was discharged for misconduct connected with his work.'" *Esquivel*, 498 S.W.3d at 835 (quoting *Seck v. Dep't of Transp.*, 434 S.W.3d 74, 82 (Mo. banc 2014)). As a result, Con–Way had the burden of proving, by a preponderance of the evidence, that Wood was discharged for misconduct connected with

his work. *Stahl v. Hank's Cheesecakes, LLC*, 489 S.W.3d 338, 342 (Mo. App. E.D. 2016).

The definition of misconduct, as that term is used in section 288.050.2, was amended by the General Assembly in 2014, and provides as follows:

[C]onduct or failure to act in a manner that is connected with work, regardless of whether such conduct or failure to act occurs at the workplace or during work hours, which shall include:

(a) Conduct or a failure to act demonstrating knowing disregard of the employer's interest or a knowing violation of the standards which the employer expects of his or her employee;

(b) Conduct or a failure to act demonstrating carelessness or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or a knowing disregard of the employer's interest or of the employee's duties and obligations to the employer;

(c) A violation of an employer's no-call, no-show policy; chronic absenteeism or tardiness in violation of a known policy of the employer; or two or more unapproved absences following a written reprimand or warning relating to an unapproved absence unless such absences are protected by law;

(d) A knowing violation of a state standard or regulation by an employee of an employer licensed or certified by the state, which would cause the employer to be sanctioned or have its license or certification suspended or revoked; or

(e) A violation of an employer's rule, unless the employee can demonstrate that:

　a. He or she did not know, and could not reasonably know, of the rule's requirements;

　b. The rule is not lawful; or

　c. The rule is not fairly or consistently enforced . . . .

Section 288.030.1(23). The Commission found that Con–Way did not sustain its burden to establish misconduct pursuant to either section 288.030.1(23)(a) or (b). Though Con–Way disagrees, we conclude that the Commission's findings are supported by sufficient competent evidence.

■ To prove misconduct under section 288.030.1(23)(a), Con–Way was required to establish either that: (1) Wood knowingly disregarded Con–Way's interest; or (2) Wood knowingly violated a standard which Con–Way expected of him. The Commission concluded that, while Con–Way successfully established that it had "an interest in its drivers exercising good judgment in operating its vehicles" and had "reasonable policies that discharge could occur for overturning the assigned tractor or trailer, having an unacceptable pattern or history of unsafe driving, including crashes and moving violations, or failing to maintain control of the assigned tractor," there was no evidence of Wood's knowing disregard or violation of these standards. In particular, the Commission cited a lack of evidence that Wood knew he was taking the turn onto the entrance ramp too quickly, and instead characterized Wood's driving as "at most a matter of poor judgment in handling the tractor-trailer." Though the Commission found that Wood took the entrance ramp too fast, it also found that Con–Way presented no evidence that Wood was driving in excess of a posted speed limit, or that Wood knew that he was driving too fast for the conditions. Con–Way does not challenge these factual findings. We agree with the Commission that based on these findings, Con–Way failed to meet its burden to prove Wood engaged in misconduct pursuant to section 288.030.1(23)(a).

■ To prove misconduct under section 288.030.1(23)(b), Con–Way had to demonstrate that Wood engaged in "[c]onduct or a failure to act demonstrating carelessness or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or a knowing disregard of [Con–Way's] interest or of [Wood's] duties and obligations to [Con–Way]." Con–Way asserts that the series of accidents and incidents Wood had during his employment with Con–Way, culminating with the April 6, 2016 accident, satisfied this standard. We disagree.

"Missouri courts have consistently held that simple acts of negligence, accidents and mistakes, bad judgment, or poor workmanship do not rise to the level of scienter required to constitute disqualifying misconduct." *Wilson v. Progressive Waste Sols., Inc.*, No. ED104512, —— S.W.3d ——, ——, 2017 WL 361182, at *4 (Mo. App. E.D. Jan. 24, 2017) (addressing misconduct pursuant to section 288.030.1(23)(b)). Con–Way presented no evidence to suggest that the April 6, 2016 accident was the result of anything other than Wood's simple negligence in driving faster than appropriate for the conditions he encountered. The Commission found, and we agree, that the April 6, 2016 incident "appears to [have been] an unfortunate accident."

Though the Commission found that Wood had received eight write-ups for safety issues before the April 6, 2016 accident, it also found that for six of these write-ups, Conway offered no evidence of Wood's behavior, and instead provided only Con–Way's conclusion that the incidents involved "preventable crashes." The Commission found, and we agree, that "there was no competent evidence" that the crashes at issue in these six write-ups were Wood's fault. The other two write-ups involved incidents in January 2011,

where Wood was alleged to have been speeding, and in February 2012, where Wood was alleged to have run a red light. Though the Commission found these incidents afforded competent evidence of carelessness or negligence, it also found the incidents to be too "distant in time from the final incident" on April 6, 2016, to support the conclusion that Wood's "safety history involved more than two recurring episodes of careless[ness] or negligence." We agree with the Commission that based on these findings, Con–Way failed to meet its burden to prove Wood engaged in misconduct pursuant to section 288.030.1(23)(b).

Con–Way also alleges that the Commission erred as a matter of law because it failed to find that Wood was discharged for misconduct as described in section 288.030.1(23)(e) because he violated an employer's rule. The Division acknowledges that the Commission failed to address the subject of misconduct pursuant to section 288.030.1(23)(e), though Con–Way's challenge to Wood's unemployment claim fairly raised the issue.

Section 288.030.1(23)(e) was added to the definition of "misconduct" by the General Assembly in 2014. Section 288.030.1(23)(e) provides that a claimant's violation of an employer's rule is misconduct. Unlike sections 288.030.1(23)(a) and (b), which require an employer to establish either a knowing or deliberate disregard of an employer's interest or standards, or carelessness or negligence of such a degree or recurrence as to manifest culpability or wrongful intent, section 288.030.1(23)(e) is devoid of any such requirement. *Esquivel*, 498 S.W.3d at 836–37. Unique as well to section 288.030.1(23)(e) is its incorporation of burden shifting language. Once an employer establishes that an employee was discharged because he or she violated an employer's rule, the burden shifts to the

employee to remove the rule violation from the ambit of "misconduct" by demonstrating that: (1) the employee did not know, or could not have reasonably known, of the rule's requirements; (2) the rule is not lawful; or (3) the rule is not fairly or consistently enforced. Section 288.030.1(23)(e)(a–c); *Esquivel,* 498 S.W.3d at 836 (holding that once employer demonstrates misconduct based on violation of an employer's rule, "the burden shifts to the employee to demonstrate a statutory excuse that operates to remove the rule violation from the definition of misconduct").

Very few cases have addressed section 288.030.1(23)(e), due no doubt to its recent enactment. In *Esquivel,* there was no dispute that the employer had a rule prohibiting use of profanity, that the claimant violated the rule, and that substantial, competent evidence supported the Commission's finding that the claimant failed to establish a statutory excuse. 498 S.W.3d at 836. In *Stahl,* the Commission's award of benefits was affirmed on appeal notwithstanding an employer's claim of misconduct, though the Eastern District made a point of noting that it was not addressing section 288.030.1(23)(e) because "[t]he record is devoid of any evidence that [employer] had in place a rule or policy addressing physical contact between employees. For that reason, [employee's] conduct cannot be deemed misconduct under Section 288.030.1(23)(e) as a 'violation of the employer's rule.'" 489 S.W.3d at 343. In *Wilson,* a case that similarly involved an employer's assertion of misconduct based on an employee's "preventable accident" in a company truck, the Eastern District reversed a finding of misconduct pursuant to section 288.030.1(23)(b) because the Com-

mission's conclusion that the employee engaged in recurrent negligence of a degree that constituted manifest culpability was not supported by substantial, competent evidence. —— S.W.3d at ——–——, 2017 WL 361182, at \*\*3–5. *Wilson* did not address whether the Commission's finding of misconduct could have been alternatively supported pursuant to section 288.030.1(23)(e) because the Commission made no finding in that regard and because the employer apparently did not present evidence that would have required the Commission to do so. *Id.* at ——, —— n. 5, 2017 WL 361182, at \*1, \*4, n.5 (observing that the Commission's misconduct discussion was limited to section 288.030.1(23)(b), and that the employer "failed to include any written accident and disciplinary policies in the record").

■ Here, in stark contrast to *Stahl* and *Wilson,* Con–Way's initial protest of Wood's claim for unemployment compensation alleged that Wood was discharged for violating written employee conduct policies, and attached those written policies, fairly raising the issue of "misconduct" pursuant to section 288.030.1(23)(e). The Division acknowledges in its Brief that the Commission made no findings or conclusions specifically directed toward a discussion of misconduct pursuant to section 288.030.1(23)(e) and suggests that we are required to remand this matter as a result.[2] We agree.

■ "Section 288.200 requires the Commission to issue a decision and 'its reasons therefor.'" *Norath v. Div. of Emp't Sec.,* 490 S.W.3d 792, 795 (Mo. App. E.D. 2016). Our review of the decision is limited to those issues determined by the Commission. *Taylor v. Div. of Emp't Sec.,*

---

**2.** The Division also argues that we should construe the reference to "rule" in section 288.030.1(23)(e) to be limited to "rules" that describe prohibited conduct and not prohibit-

ed results of conduct. We express no opinion about this argued construction of the statute, given our obligation to remand this matter.

488 S.W.3d 251, 258 (Mo. App. W.D. 2016). While section 288.200 does not specify what form the Commission's decision must take, it "must provide for the intelligent review of the decision and reveal a reasonable basis for the Commission's decision." *Norath*, 490 S.W.3d at 795. "There cannot be intelligent review of the decision when the Commission fails to address essential factual issues." *Id.* Thus, "[w]hen the Commission fails to address essential factual issues, its decision must be reversed and the cause remanded so that the Commission can resolve the essential issues." *Id.*

Here, the Commission failed to address an issue that was squarely before it: whether Wood was discharged for misconduct pursuant to section 288.030.1(23)(e). While Con–Way clearly indicated in its letter protesting payment of unemployment compensation benefits that Wood "was discharged on April 7, 2016, for misconduct connected with work, as the result of three Company policy violations," and while the Commission found that Con–Way "discharged [Wood] for speeding and overturning a vehicle in violation of" its employee conduct policy, the Commission did not express whether it believed the violated policies constituted the violation of employer rules as contemplated by section 288.030.1(23)(e).[3] And even presuming such a finding, the Commission failed to address whether Wood demonstrated a statutory excuse described in section 288.030.1(23)(e).[4]

Because the Commission did not address whether Wood was discharged for misconduct in a manner sufficient to deny him unemployment compensation pursuant to section 288.030.1(23)(e), we are unable to conduct an intelligent review of that issue. We are required to remand this matter to the Commission to determine whether Wood was discharged for misconduct connected with work pursuant to section 288.030.1(23)(e).

## Conclusion

We affirm the Commission's decision finding that Wood did not commit misconduct disqualifying him from receiving unemployment compensation pursuant to section 288.030.1(23)(a) and (b). We reverse the Commission's conclusion that Wood is entitled to receive unemployment benefits, however, and remand this matter to the Commission to determine whether Wood is disqualified from receiving unemployment compensation pursuant to section 288.030.1(23)(e).

All concur

---

3. The Commission's assessment of whether Con–Way's employee conduct policy constitutes an employer's rule as contemplated by section 288.030.1(23)(e) will involve a question of law that will be subject to *de novo* review. However, remand is nonetheless appropriate, particularly as factual issues relevant to the application of section 288.030.1(23)(e) also remain unresolved. We cannot conduct appellate review of a decision

that has not yet been made by the Commission.

4. The Commission did find that Wood had knowledge of the employee conduct policies at issue in this case. The Commission made no findings, however, about whether the provisions of the employee conduct policy at issue in this case were demonstrated by Wood to be unlawful or unfairly or inconsistently enforced.