

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

JOHN J. BENOIST, JR.,             )  No. ED110753
)
      Appellant,            )
)
vs.                         )  Appeal from the Labor and
)  Industrial Relations Commission
WESTIN TRADING, INC.,        )
AND                     )
DIVISION OF EMPLOYMENT SECURITY,  )
)
      Respondents.         )  Filed: February 28, 2023

## OPINION

John J. Benoist, Jr. ("Benoist") appeals from the decision of the Labor and Industrial Relations Commission (the "Commission") denying his claim for unemployment benefits sought during the COVID-19 pandemic. Benoist brings two points on appeal. However, because his second point is dispositive of this appeal, we do not address his first point. In his second point, Benoist argues the Commission erred in denying his claim because he was eligible for Pandemic Unemployment Assistance ("PUA") available under the federal Coronavirus Aid, Relief, and Economic Security Act of 2020 (the "CARES Act"). Specifically, Benoist claims he was eligible under a particular provision that applied to individuals who were denied continued unemployment benefits because they refused to return to a workplace that was not in compliance with local, state, or national COVID-related safety recommendations.

Throughout the entire claims process, Benoist has maintained that his employer, Westin Trading, Inc. ("Westin"), was not complying with certain safety recommendations of the CDC, which he believed rendered his workplace unsafe and was the reason he refused to return to work after April 23, 2020. However, because the Commission, which adopted the written decision of the Division of Employment Security (the "Division"), did not address Benoist's eligibility for PUA benefits under this particular provision of the CARES Act, we cannot review the denial of Benoist's benefits claim, as is our mandate under § 288.210[1]; *see also Mickles v. Maxi Beauty Supply, Inc.*, 566 S.W.3d 274, 277 (Mo. App. E.D. 2019). Therefore, we reverse and remand for a hearing and determination on the issue of whether Benoist is eligible for PUA benefits under this particular provision of the CARES Act.

## I.      Factual and Procedural History

### *Introduction*

Benoist began working as a "package preparer" for a subsidiary of Westin in 2017. Benoist's last day of work was April 23, 2020, which was during the early weeks of the COVID-19 pandemic. Although work was still available at the time, Benoist claims he refused to report for work after this date because he believed Westin was not providing a safe work environment. Specifically, he maintains that Westin was not following the then-current CDC safety recommendations, which included wearing masks and maintaining a distance of at least six feet from other employees. However, Westin disputes whether Benoist raised his safety concerns *before* filing his first claim for unemployment benefits in April 2020, as further explained below.

### *Benoist's Files Three Separate Claims for Unemployment Benefits*

Shortly after his last day of work, Benoist filed the first of three separate claims for unemployment benefits with the Division, each of which Westin objected to and each of which

---

[1] All statutory references are to RSMo (2016), unless otherwise specified.

the Commission denied. However, only the third claim is addressed in this appeal, as Benoist's first two claims were addressed in a prior consolidated appeal to this Court, and we affirmed the denial of both claims.

### Claim 1

Benoist's first claim sought regular unemployment benefits under Chapter 288 RSMo (2016). A deputy of the Division denied this claim, simply noting that Benoist was not eligible because he "[was] not available for work" and that he had "restricted his availability for work." Benoist appealed to the Appeals Tribunal of the Division, which held a hearing and subsequently affirmed the denial of benefits by written decision on September 30, 2021. The Appeals Tribunal found that Benoist had "voluntarily quit his job," and concluded that he "did not want to work his schedule due to the fear of being exposed to the COVID-19 virus." The Appeals Tribunal further concluded that Benoist believed Westin "was not following the guidelines and did not feel safe working," and ultimately determined he was ineligible for benefits under § 288.040.1(2). The Commission affirmed the denial of benefits on November 30, 2021, adopting the decision of the Appeals Tribunal as its own.

### Claim 2

In January 2021, Benoist filed a second claim for unemployment benefits, but this claim only sought PUA benefits. Eligibility for PUA benefits is generally governed by 15 U.S.C. § 9021 (2020), which contains criteria beyond those set forth for regular unemployment benefits under Missouri law. The deputy denied Benoist's PUA claim on April 5, 2021, simply stating: "PUA benefits are not payable to individuals whose unemployment was not caused by the pandemic prescribed under the CARES Act of 2020." Benoit appealed to the Appeals Tribunal

3

of the Division, which affirmed the denial of PUA benefits by written order on October 5, 2021.[2] The Appeals Tribunal cited to 15 U.S.C. § 9021, but concluded that none of the eligibility criteria applied to Benoist's situation. In particular, the Appeals Tribunal concluded that Benoist was not eligible for PUA benefits because his job loss "was not a ***direct result*** of the COVID-19 pandemic" (emphasis added). This was apparently an attempt to address Benoist's eligibility under 15 U.S.C. § 9021(a)(3)(a)(i)(ii), which provides that a claimant is eligible for PUA benefits if "the individual has to quit his or her job as a ***direct result*** of COVID-19" (emphasis added). However, the Appeals Tribunal concluded that Benoist "had a generalized concern about being exposed to COVID-19 in the workplace and chose to quit," further concluding that "[n]othing prevented him from continuing to work." The Commission affirmed the denial of PUA benefits on November 30, 2021, adopting the decision of the Appeals Tribunal as its own.

<u>Benoist Appeals the Denial of Claims 1 and 2 to this Court</u>

Benoist appealed the Commission's denial of his claims for regular and PUA benefits to this Court, which were addressed in one consolidated appeal. Benoist raised several errors in the denial of these benefits, but we affirmed the Commission's decisions on August 15, 2022. *See Benoist v. Westin Trading, Inc.*, 649 S.W.3d 398 (Mo. App. E.D. 2022) (mem.) [*Benoist I*].[3] Of particular note, Benoist argued that the Commission failed to consider his eligibility for PUA benefits under the additional guidance issued by the U.S. Department of Labor on February 25, 2021, via Unemployment Insurance Program Letter No. 16-20, Change 5 ("UIPL–Change 5"), which extended benefits to those who were denied continued unemployment benefits because

---

[2] Although the record is not clear, it appears that the Appeals Tribunal did not conduct a hearing with respect to Benoist's claim for PUA benefits.

[3] We have also reviewed the memorandum supplementing the order issued in *Benoist I*, which is <u>not</u> otherwise publicly available, but was provided only to the parties pursuant to Supreme Court Rule 84.16(b) (2022) and was made a part of the record on appeal in this case. Additional references to *Benoist I* herein are based on this memorandum.

they refused to return to work at a worksite that was not in compliance with local, state, or national health and safety standards related to COVID-19 (the "Safety Provision"), among other criteria. *See* Unempl. Ins. Rep. (CCH) P 22486, 2020 WL 8872188. In addition, although not cited in our memorandum in *Benoist I*, it should be noted that on September 3, 2021, the U.S. Department of Labor issued Unemployment Insurance Program Letter No. 16-20, Change 6 ("UIPL–Change 6"), which, *inter alia*, provided further clarification regarding eligibility for PUA benefits under the Safety Provision, including two hypothetical situations whereby eligibility is now permitted. *See* Unempl. Ins. Rep. (CCH) P 22501, 2021 WL 4264222.

In *Benoist I*, however, we held that the Commission did not err in failing to consider Benoist's eligibility under the Safety Provision because the issue "was not preserved for our review." Specifically, we noted that, "[n]othing in the record indicates that this issue was presented to the Commission or the Division," further noting that although Benoist's request for review "complained of a number of issues," he did not "request a review under [UIPL–Change 5]." Therefore, we recognized that "[t]he Commission made no determination on this issue because it was not preserved for review." However, we further noted that Benoist received a letter from the Division in November 2021 advising him that he could "refile his PUA claim for consideration of the revised PUA eligibility criteria" (the "Notice Letter").[4]

---

[4] In the Notice Letter, which reflects that it was mailed on November 22, 2021, the Division acknowledged that Benoist's prior claim for PUA benefits had been denied because he did not meet one of the specific COVID-19 related reasons. However, the Notice Letter advised Benoist of recent changes to the eligibility provisions for PUA benefits. Specifically, the letter stated that on February 25, 2021, the "U.S. Department of Labor approved new COVID-19 related reasons under which you may self-certify eligibility for PUA, if eligible," which presumably was a reference to UIPL–Change 5. The Notice Letter listed fourteen new eligibility criteria, which included the following: "I was denied continued unemployment benefits because I refused to return to work or accept an offer of work at a worksite that, in either instance, is not in compliance with local, state, or national health and safety standards directly related to COVID-19. This includes but is not limited to, those related to facial mask wearing, physical distancing measures, or the provision of personal protective equipment consistent with public health guidelines." The Notice letter stated that a response was due within 21 days from the date it was mailed.

## Claim 3

Although the record is unclear exactly when, in mid-2021 Benoist filed his third claim for benefits, which the deputy denied on October 7, 2021.[5]  Specifically, the deputy determined that Benoist was disqualified because he "left work with [Westin] voluntarily without good cause attributable to the work or employer on 04/23/2020."  The deputy further found that although "[c]ontinuing work was available," Benoist quit and did not return to work "because of safety concerns regarding Covid-19."  Although the deputy cited § 288.050, the decision did not cite or otherwise reference the Safety Provision, UIPL–Change 5, or UIPL–Change 6.

Benoist appealed the deputy's determination to the Appeals Tribunal of the Division by hand-written letter dated October 28, 2021, which was received on November 4, 2021.  In his letter, Benoist stated as follows regarding his eligibility for benefits: "After completing my shift work on 4/23/2020, I explained to my boss that the unsafe and unsuitable work conditions were in direct violation of the Center for Disease Control (CDC) guidelines and policy issued because the U.S. government declared a COVID-19 Public Health Emergency."  Benoist's letter also stated that the CDC's guidelines include "six (6) foot social distancing and masks be worn."  However, Benoist states that Westin "had no mask requirement and no one wore masks."  Benoist further stated that the "continuing work" Westin provided was "only 3 feet face to face with an older (69 years) smoker that hacked all work hours."  Thus, Benoist concluded, "[t]his 'continuing work' was in no way, shape or form suitable but 100% unsuitable!"  Benoist signed the letter and included a copy of the deputy's written determination.[6]

---

[5] The record on appeal does not contain any written documents filed by Benoist in connection with his third claim for benefits, and therefore, we do not know exactly what type of benefits he requested and/or any authority he relied upon.

[6] The record also contains a signed hand-written letter from Benoist to the Division, dated December 8, 2021, whereby Benoist acknowledges receipt of the Notice Letter.  In this letter, Benoist specifically references the Safety Provision (although he does not cite to UIPL–Change 5 or UIPL–Change 6), and specifically states that he is

The Appeals Tribunal held a telephone hearing on December 1, 2021. Benoist appeared *pro se*, and Westin's owner, Paul Lochner, testified on its behalf. Consistent with his allegations in each of his prior two claims, Benoist testified that his last day of work was April 23, 2020, and that he refused to return to work thereafter because of his concerns about Westin not complying with the CDC's safety recommendations at the time, including not requiring or wearing masks and not providing a workspace where he could be at least six feet apart from his co-worker. Benoist's relevant testimony was as follows:

> Oh. Well, after work [on April 23, 2020], I explained to Bob[7] that the work conditions weren't suitable for me to continue working at the station that I was assigned. And I explained that they're not in compliance with the COVID-19 CDC emergency guidelines and policy of six feet distancing and, um, masks being worn. No masks were required, nor worn. And I was stationed at a three foot wide table across from a 69-year-old chain smoker that, uh, hacked in my face all day. And I said, I probably won't be coming in any more unless I get a different station to work at. And that's why – you know, that's why he, uh, called me, uh, I believe it was on April 30th, or whatever, and said, John, you know, you still have your job, you know, you're still working. And I said, great, great. Do I have a new station, or have you – have you got some distance requirements there or anything? He said, no, you're going to have to work at the same station across from Steve. And I said, well, I don't think I'm going to come in then, you know. It's not, uh, it's not safe for me to do that. So, that more or less was my last day of working. Subsequently, he left me a couple more messages on the phone in late April. I don't know the exact dates right at this second. And I called him a couple of times to see if anything had changed with the station requirement, and no, nothing had changed. So, um, when I found later, much later actually, a few months later, that [Westin] had started to comply with the CDC policies, I went into the warehouse and talked to Bob about where was my station to work. And he said, John, you're going to have to talk to Sue, who manages the warehouse. And I said okay. So, Sue came back to the warehouse section, and explained to me that, uh, I was not to be brought back to work under any circumstances once Paul found out that I had applied for unemployment. And that's when I effectively realized that I wasn't laid off, or wasn't able to come back to work.

For his part, Lochner confirmed most of the basic details regarding Benoist's employment with Westin. However, Lochner testified that Benoist was not terminated, but

---

reapplying for PUA benefits. Benoist concludes by stating that he believes he meets this new criterion and self-certified his eligibility for PUA benefits.

[7] The record indicates that Benoist is referring to Bob Udasco, the manager of the warehouse where Benoist worked.

7

rather he "quit" and simply stopped showing up after April 23, 2020. According to Lochner, Benoist also did not return any of his phone calls, but admitted that Benoist spoke with Udasco on April 30, 2020. Lochner also testified that Benoist never said anything to him or anyone else about his safety concerns, which Lochner said he initially learned about when Benoist filed his first claim for unemployment benefits. However, Lochner subsequently admitted that Benoist did raise his safety concerns when he unexpectedly showed up at the warehouse a few months later and spoke with Udasco about possibly returning to work.

The Appeals Tribunal affirmed the deputy's denial of benefits by written decision on March 30, 2022, specifically noting that Benoist testified he did not return to work "because he did not believe that he was being properly protected from COVID-19 and he was in fear of contracting COVID-19." The Appeals Tribunal also noted that Westin testified that Benoist "just stopped showing up and did not return any of the employer's calls." The Appeals Tribunal found that Benoist "did not give [Westin] any notice of his intent to leave."

However, neither UIPL–Change 5 nor UIPL–Change 6 (collectively the "UIP Letters") were cited or otherwise referenced in the Appeals Tribunal's decision. Rather, the Appeals Tribunal only cited to § 288.050.1(1) with respect to Benoist's eligibility for benefits, and ultimately concluded: "Based on the competent evidence … [Benoist] did not have good cause to quit working for [Westin] on April 23, 2020." The decision further noted that Benoist "quit because he believed that he was not being properly protected from COVID-19 and he was afraid of contracting COVID-19." Finally, the decision concluded that Benoist's quitting for this reason "did not constitute good cause attributable to [Benoist's] work or the employer."

Benoist appealed the Appeals Tribunal's decision to the Commission by letter dated April 9, 2022. Benoist's appeal letter begins by stating that he "voluntarily" separated from Westin on

8

April 30, 2020, but claims he had "good cause" attributable to the workstation he was assigned.

Regarding the legal basis for his benefits claim, Benoist stated:

> The CARES Act of 2020 was initiated with specific eligibility reasons for PUA which includes "the individual was denied continued unemployment benefits because he refused to return to work or accept an offer of work at a work site, that, in either instance is not in compliance with local, state, or national health and safety standards directly related to COVID-19. This includes but is not limited to, those related to facial mask wearing, physical distancing measures, or the provision of personal protective equipment consistent with public health guidelines."

Benoist then noted that his first two claims were then-pending at the Missouri Court of Appeals, Eastern District, and stated that the issue in those claims is identical to the issue here: whether he "voluntarily separated with good cause or without good cause attributable to the work or employer." Benoist further stated it was "abundantly clear" he had "good cause" to separate because his assigned workstation "was not in compliance with local, state, or national health and safety standards directly related to COVID-19." In addition, Benoist specifically referenced the Notice Letter and attached a copy of the same, as well as attached a second document that provided additional information on PUA benefits and the new eligibility criteria (the "Supplemental PUA Notice").[8] Thus, Benoist stated that he "hopes and prays" the Commission reverses the decision with respect to his third benefits claim, and further, that the Missouri Court of Appeals likewise reverses the Commission's decision with respect to his first two benefits claims. Benoist signed the letter, which the Commission received on May 3, 2022.

The Commission affirmed the denial of Benoist's third claim for benefits on June 14, 2022, adopting the decision of Appeals Tribunal as its own. Benoist thereafter appealed the Commission's decision to this Court.

---

[8] Although the record is not clear, it appears that the Supplemental PUA Notice was sent to Benoist by the Division in conjunction with the Notice Letter.

9

## II.     Standard of Review

Our review of the Commission's decision is governed by the Missouri Constitution and § 288.210. *Mickles*, 566 S.W.3d at 276-77; *see also Difatta-Wheaton v. Dolphin Capital Corp.*, 271 S.W.3d 594, 595 (Mo. banc 2008). We review whether the Commission's decision is "authorized by law" and "supported by competent and substantial evidence upon the whole record." *Mickles*, 566 S.W.3d at 277 (quoting Mo. Const. art. V, § 18). Specifically, § 288.210 provides that we may modify, reverse, remand for rehearing, or set aside the Commission's decision upon finding: (1) that the Commission acted without or in excess of its powers; (2) that the decision was procured by fraud; (3) that the facts found by the Commission do not support the decision; or (4) that there was not sufficient competent evidence in the record to support the decision. *Id.*; *see also Jackson-Mughal v. Div. of Emp. Sec.*, 359 S.W.3d 97, 100 (Mo. App. W.D. 2011). We are tasked with reviewing the Commission's decisions for "legal error," and in doing so, "we manifestly are not bound by any of the Commission's legal conclusions or application of the law to the facts." *Mickles*, 566 S.W.3d at 277. Therefore, we review questions of law *de novo*. *Id.* However, regarding questions of fact, "§ 288.210 prohibits us from hearing new evidence and requires us, in the absence of fraud, to accept the Commission's factual findings so long as they are supported by competent and substantial evidence in the record." *Id.*

Where, as here, the Commission adopts the decision of the Appeals Tribunal, we review the decision of the Appeals Tribunal. *Walker v. John J. Smith Masonry Co.*, 654 S.W.3d 123, 126 (Mo. App. E.D. 2022).

**III. Discussion**

A.     Benoist Raises and Preserves the Safety Issue During the Entire Claims Process

Throughout the entire claims process, Benoist has consistently maintained that in April of 2020, Westin was not complying with the CDC's mask and 6-foot distancing safety recommendations.  Benoist has also consistently maintained that as a result of Westin's non-compliance with the CDC's safety recommendations, he was concerned for his personal safety and this was the reason he refused to return to work after April 23, 2020.  Accordingly, Benoit has consistently argued that he is entitled to PUA benefits, having raised the issue before the deputy, the Appeals Tribunal, the Commission, and now this Court.  We address each stage of the administrative claims process separately below, and find that Benoist has properly raised and preserved the issue of his eligibility for PUA benefits under the Safety Provision at each stage.

*The Initial Benefits Claim*

Although the record does not contain any documents or other written evidence reflecting how Benoist initially stated his third claim for benefits to the Division, the deputy's determination plainly indicates that Benoist raised his personal safety concerns, as the deputy stated the following reason for the denial of benefits: "The claimant quit because of safety concerns regarding Covid-19.  Continuing work was available."  Therefore, we find that, under the circumstances, Benoist properly raised the issue of his personal safety concerns at the first stage of the claims process.  However, as noted, the deputy's determination did not cite to or otherwise reference Benoist's potential eligibility for PUA benefits under the Safety Provision, citing only § 288.050.

*The Appeals Tribunal*

In Benoist's appeal of the deputy's determination to the Appeals Tribunal of the Division (by letter dated October 28, 2021), he explained that he had told his boss about his personal safety concerns, including Westin's failure to require or wear masks or to provide a workspace that permitted at least six feet of space between him and his coworker, per CDC guidelines.

8 CSR 10-5.010(3)(A) governs appeals from a deputy's decision to the Appeals Tribunal, and provides in pertinent part: "Any signed, legible written notice filed by a party in accordance with these regulations, which expresses disagreement with or otherwise indicates a desire to appeal a determination or recommendation, in the absence of a reconsideration by the deputy, shall constitute an appeal." Missouri courts construing this regulation have recognized that, "it has long been the law of this state that '[a] notice of appeal which can reasonably be construed as an attempt in good faith to appeal from a final judgment or appealable order shall be deemed sufficient." *Rector v. Kelly*, 183 S.W.3d 256, 262 (Mo. App. W.D. 2005) (quoting *Weller v. Hayes Truck Lines*, 197 S.W.2d 657, 660-61 (Mo. banc 1946)). "This rule reflects the important policy underlying Missouri's judicial system that because '[c]ases should be heard on the merits if possible,' the statutes and rules governing the orderly administration of justice 'should be construed liberally in favor of allowing appeals to proceed.'" *Id*. (quoting *Sherrill v. Wilson*, 653 S.W.2d 661, 663 (Mo. banc 1983)); *see also Berger v. Cameron Mut. Ins. Co.*, 173 S.W.3d 639, 641 (Mo. banc 2005). "Consequently, it is the duty of an appellate court freely to exercise its jurisdiction to provide a review on the merits in every instance that it may properly do so." *City of Lake Winnebago v. Sharp*, 652 S.W.2d 118, 122 (Mo. banc 1983) (quoting *Weller*, 197 S.W.2d at 659).

We find that Benoist properly preserved the issue of his personal safety concerns to the Appeals Tribunal, which he raised again during the hearing conducted on December 1, 2021. Although Benoist did not expressly cite to the UIP Letters during the hearing, he did discuss the factual basis for his concerns in detail, as the selected excerpt from the hearing transcript (discussed above) clearly reflects. However, despite Benoist raising the personal safety issue in his notice of appeal and at the hearing, the written decision of the Appeals Tribunal failed to address Benoist's eligibility for PUA benefits under the Safety Provision contained in the UIP Letters, only addressing Benoist's eligibility for regular benefits under § 288.050. This is baffling because the Appeals Tribunal clearly understood the nature of Benoist's request for benefits, finding: "The claimant testified that he did not return to work because he did not believe that he was being properly protected from COVID-19 and he was in fear of contracting COVID-19." Likewise, in its "Conclusions of Law" section, the Appeals Tribunal stated: "The Claimant quit because he believed that he was not being properly protected from COVID-19 and he was afraid of contracting COVID-19." On this basis, the Appeals Tribunal ultimately concluded that Benoist's "quitting for this reason did not constitute good cause attributable to claimant's work or the employer," which presumably was a reference to § 288.050 (which had been cited in the "Law" section of the decision). However, as noted, the Appeals Tribunal did not address Benoist's eligibility for PUA benefits under the Safety Provision, despite the fact that the decision was issued on March 30, 2022, well after the U.S. Department of Labor promulgated the UIP Letters to the public (i.e., February 25, 2021, and September 3, 2021, respectively), and despite the fact that the Division's own Notice Letter to Benoist expressly referenced each of the new eligibility criteria contained in the UIP Letters, including the Safety Provision.

13

*The Commission*

Although Benoist's appeal of the Appeals Tribunal's decision (by letter dated April 9, 2022) did not expressly cite to the UIP Letters, he did reference "The CARES ACT of 2020," and quoted the pertinent language of the Safety Provision (which tracked the language of the Supplemental PUA Notice). In addition, Benoist attached the Notice Letter and the Supplemental PUA Notice, both of which specifically included the terms of the Safety Provision.

8 CSR 20-4.010(1)(A) governs appeals from decisions of the Appeals Tribunal to the Commission, and provides:

> Any interested party to a decision of an appeals tribunal of the division may file an application to have the decision reviewed by the commission by filing the application with the commission or by filing it with the division, as agent of the commission, within thirty (30) days following the date of notification or mailing of the decision, as provided in section 288.200, RSMo. An application for review shall be signed by the claimant, sole proprietor, partner, or an officer or employee of a corporation. A licensed Missouri attorney may sign an application on behalf of any interested party.

Therefore, consistent 8 CSR 20-4.010(1)(A) and the general rule that cases should be decided on the merits, *Rector*, 183 S.W.3d at 262, we find that Benoist properly preserved the issue of his personal safety concerns to the Commission. However, as noted, the Commission simply adopted the decision of the Appeals Tribunal as its own, and did not take any additional evidence or make any additional findings of fact or conclusions of law.

### B.   Benoist Appeals to This Court

As noted, Benoist's second point on appeal raises the issue of his personal safety concerns to this Court. Although Benoist's brief did not comply with Rule 84.04[9], our preference is to dispose of cases on the merits where violations of Rule 84.04 "do not hamper or impede our ability to review the case." *Hendrix v. City of St. Louis*, 636 S.W.3d 889, 898 (Mo.

---

[9] All rule references are to Missouri Supreme Court Rules (2022).

App. E.D. 2021). Accordingly, we exercise our discretion to gratuitously review Benoist's second point on appeal on the merits, as we can nonetheless discern his primary argument—that the Commission erred in denying his claim for PUA benefits because he is eligible under the Safety Provision of the Cares Act in that he refused to return to work after April 23, 2020, due to Westin's failure to follow the CDC's COVID-related safety recommendations.

Accordingly, we find that Benoist has properly preserved the issue of his personal safety concerns to this Court. Therefore, we next address the ramifications of the failure of the deputy, the Appeals Tribunal, and the Commission to address Benoist's eligibility for PUA benefits under the Safety Provision of the CARES Act.

### C. Applicable Law

"Section 288.200 requires the Commission to issue a decision and 'its reasons therefor.'" *Norath v. Div. of Emp. Sec.*, 490 S.W.3d 792, 795 (Mo. App. E.D. 2016); *accord Con-Way Truckload, Inc. v. Wood*, 511 S.W.3d 478, 486 (Mo. App. W.D. 2017). Specifically, "[t]he Commission is required 'to make unequivocal, affirmative findings of fact' in its decision." *Wooden v. Div. of Emp. Sec.*, 341 S.W.3d 770, 774 (Mo. App. W.D. 2011) (quoting *Dolgencorp, Inc. v. Zatorski*, 134 S.W.3d 813, 819 (Mo. App. W.D. 2004)). "Our review of the decision is limited to those issues determined by the Commission." *Con-Way Truckload*, 511 S.W.3d at 486. Although "[t]he decision need not be in any particular form," it "must provide for the intelligent review of the decision and reveal a reasonable basis for the Commission's decision." *Norath*, 490 S.W.3d at 795; *Dolgencorp*, 134 S.W.3d at 819. However, "[t]here cannot be intelligent review of the decision when the Commission fails to address essential factual issues." *Norath*, 490 S.W.3d at 795. "When the Commission fails to address essential factual issues, its

15

decision must be reversed and the cause remanded so that the Commission can resolve the essential issues." *Id*.

### D. Analysis

Although Benoist raised the issue of his personal safety concerns at the initial stage of the administrative claims process, and clearly preserved that issue in each subsequent stage thereof, neither the deputy, the Appeals Tribunal, nor the Commission analyzed Benoist's eligibility for PUA benefits under the Safety Provision of the CARES Act or attempted to make any necessary findings of fact or conclusions of law with respect thereto. Rather, at each stage of the process, Benoist's claim was only analyzed under only § 288.050, which does not contain any eligibility criteria covering the factual scenario he has consistently alleged. Therefore, the Commission should have addressed Benoist's eligibility for PUA benefits under the Safety Provision in accordance with its affirmative duty under § 288.200 "to issue a decision 'and its reasons therefor.'" *Norath*, 490 S.W.3d at 795. Specifically, the Commission should have made appropriate findings of fact and conclusions of law with respect to the terms of the Safety Provision, as interpreted and explained in the UIP Letters. However, the Commission's failure to do so means that we cannot conduct a meaningful review of the Commission's decision to deny Benoist's benefits claim, as we are required to do. *Id.*; § 288.210; *Mickles*, 566 S.W.3d at 276-77. Accordingly, we are compelled to reverse the Commission's decisions and remand to the Division for a hearing and determination on the issue of whether Benoist is eligible for PUA Benefits under the Safety Provision of the CARES Act.

Our holding is consistent with numerous prior cases where remand was ordered because appellate review of the Commission's decision was prevented due to insufficient findings of fact or conclusions of law on issues raised. *See, e.g., Con-Way Truckload*, 511 S.W.3d at 486-87

16

(reversing and remanding because the Commission did not address whether the claimant was discharged for "misconduct" in a manner sufficient to deny him unemployment benefits pursuant to § 288.030.1(23)(e)); *Dolgencorp, Inc.*, 134 S.W.3d at 819-20 (reversing and remanding because the Court of Appeals could not determine whether the claimant's conduct fell within the definition of "misconduct" or whether it was merely "poor judgment" arising from the alleged sexual harassment of a co-worker); *Barron v. Div. of Emp. Sec.*, 435 S.W.3d 654, 660-61 (Mo. App. W.D. 2014) (reversing and remanding for the entry of supplemental findings of fact concerning the employee's tardiness and a determination of her entitlement to benefits based on those supplemental findings); *Wooden*, 341 S.W.3d at 773-74 (reversing and remanding for additional factual findings as to whether the claimant's conduct constituted culpable or intentional behavior, or whether it was an act of negligence, poor workmanship, or lack of judgment); and *Ahearn v. Lewis Café, Inc.*, 308 S.W.3d 294, 297-98 (Mo. App. E.D. 2010) (reversing and remanding for further findings of fact and conclusions of law as to whether the claimant was terminated for "misconduct," as defined in § 288.030(1)(23)).

## IV.     Conclusion

For the foregoing reasons, we reverse the Commission's decision and remand to the Division for a hearing and determination on the issue of whether Benoist is eligible for PUA benefits under the Safety Provision, as interpreted and explained in the UIP Letters, and otherwise consistent with this opinion.

_____
Kelly C. Broniec, Presiding Judge

Philip M. Hess, J. and
James M. Dowd, J. concur.

17