Carol FENDLER, Appellant,

v.

HUDSON SERVICES, and Division of Employment Security, Respondents.

No. SC 92177.

Supreme Court of Missouri, En Banc.

July 3, 2012.

---

Timoth A. Weil, Haar & Woods LLP, St. Louis, John J. Ammann and Julianne M. Rodriguez, Saint Louis University Legal Clinic, St. Louis, for Fendler.

Ninion S. Riley, Jefferson City, for Division.

LAURA DENVIR STITH, Judge.

The Labor and Industrial Relations Commission denied the appellant, Carol Fendler, unemployment benefits after it found that she engaged in willful misconduct by repeatedly and deliberately disregarding her supervisor's instructions. Ms. Fendler appealed, arguing that the commission erred in finding that she engaged in misconduct because although she may have acted negligently she did not deliberately violate her supervisor's instructions. This Court affirms.

Section 288.030.1(23)[1] provides that an employee engages in misconduct if she deliberately violates her employer's reasonable instructions or rules or if she repeatedly acts with a degree of negligence that manifests a substantial disregard for her employer's interests or of her duties and obligations to the employer. Here, competent and substantial evidence supported the commission's finding that Ms. Fendler willfully failed to follow her supervisor's instructions, although able to do so, on 11 separate occasions after her supervisor warned her three times that she needed to comply with the instructions. Affirmed.

1. All statutory references are to RSMo 2000 unless otherwise noted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Hudson Services provides property management services, including commercial cleaning and security. Ms. Fendler was hired by Hudson in 1994, and by 2008 she had become an operations assistant in the housekeeping department. Hudson's janitorial employees use an automated telephone system to clock in and out of work. The resulting information is used to determine payroll.

One of Ms. Fendler's duties was to verify the hours of employees who failed to use the telephone system for a particular work shift. Hudson had no written policy as to how she was to undertake the verification. Until July 2008, her supervisor authorized her to do so by calling employees and entering the total hours the employees said they worked. Beginning in July 2008, Ms. Fendler was placed under a new supervisor, Pam Meister, who instructed her that entry of the total hours worked no longer would be sufficient. Ms. Fendler instead was directed to record the specific times that employees who failed to use the telephone system said they started and ended work. Ms. Meister also informed Ms. Fendler that if she wanted to enter only the total number of hours an employee worked, she needed to obtain approval from the general manager.

During 2009, Ms. Meister gave Ms. Fendler warnings on two occasions when Ms. Fendler failed to comply with the new procedure. On December 28, 2009, Ms. Meister gave Ms. Fendler a third warning when the latter again failed to comply with the required verification procedure. Nevertheless, during January 2010, Ms. Fendler failed to enter the exact time employees clocked in and out on 11 separate occasions. On January 25, 2010, Hudson fired Ms. Fendler.

Ms. Fendler filed a claim for unemployment benefits. On March 3, 2010, the division of employment security denied Ms. Fendler benefits because it found that she was discharged for misconduct.[2] Ms. Fendler appealed to the appeals tribunal, which held a hearing at which both Ms. Fendler and Ms. Meister testified.[3] Ms. Fendler testified that she always called employees to verify when they started and stopped work but that she simply failed to enter the exact times into the payroll system. She admitted that Ms. Meister told her to input employees' actual clock-in and clock-out times into the payroll system and said she did not do so because she was used to not having to do it under her previous supervisor. She denied that she received a third warning on December 28, 2009. She did not claim she did not know how to comply with Ms. Meister's instructions but instead explained that she did not know that her failure to follow the instructions would jeopardize her employment and that she would have complied with the instructions had she known she would be fired for non-compliance.

Ms. Meister testified that she instructed Ms. Fendler to enter the exact times that employees began and ended their work shifts and to get approval from the general manager before simply entering the total

**2.** "If a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work, such claimant shall be disqualified for waiting week credit and benefits...." § 288.050.2.

**3.** Hudson's owner, William Hudson, reiterated in his testimony that Ms. Fendler was required to enter the actual start and end times of employees who failed to use the telephone system and that she was required to ask for approval from the general manager if she wished simply to enter the total number of hours employees worked.

hours an employee worked. Ms. Meister also testified that she warned Ms. Fendler three times, including on December 28, 2009, that she needed to comply with these instructions. Finally, Ms. Meister stated that because Ms. Fendler did not enter the exact times that employees clocked in and out, she believed Ms. Fendler was not calling employees to verify the hours they actually worked.

The appeals tribunal reversed the deputy's finding of misconduct. Hudson appealed to the commission, which found that Ms. Meister's testimony was more credible and concluded that Hudson had met its burden of showing that Ms. Fendler had engaged in misconduct, stating:

> Claimant was in charge of checking employer's payroll and reconciling discrepancies in employees' reported hours. Claimant's supervisor, Ms. Meister, instructed her to list clock-in and clock-out times on employer's payroll program. Claimant consistently failed to comply with this directive. Ms. Meister gave claimant three chances to correct her behavior. Claimant was formally warned by Ms. Meister on December 28, 2009, to verify hours. After that warning, claimant failed on eleven occasions to list clock-in and clock-out times for employees. *Claimant's repeated failure to comply with explicit instructions takes her conduct outside the realm of mere mistakes or poor work performance and into the realm of insubordination.* See *Freeman v. Gary Glass & Mirror, LLC*, 276 S.W.3d 388, 393 (Mo. App.2009) (holding that claimant's "repeated failure to follow the Employer's specific directions" amounts to misconduct connected with work).

(emphasis added). Ms. Fendler appealed. Following a decision by the Missouri Court of Appeals, this Court granted transfer. *Mo. Const. art. V, § 10.*

## II. STANDARD OF REVIEW AND BURDEN OF PROOF

Article V, section 18 of the Missouri Constitution provides for judicial review of the commission's decisions to determine whether they "are supported by competent and substantial evidence upon the whole record." *Mo. Const. art. V, § 18.* Under section 288.210:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or
>
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award. An appeal shall not act as a supersedeas or stay unless the commission shall so order.

*§ 288.210.* "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). "This Court defers to the Commission on issues involving the credibility of witnesses and the weight given to testimony," *Johnson v. Denton Const. Co.*, 911 S.W.2d 286, 288 (Mo. banc 1995), but in so doing it does *not* view "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award." *Hampton*, 121 S.W.3d at 223. This Court reviews ques-

tions of law *de novo*, and "Whether the Commission's findings support the conclusion that a claimant engaged in misconduct connected with his or her work is a question of law." *Tenge v. Washington Grp. Int'l, Inc.*, 333 S.W.3d 492, 496 (Mo.App. 2011); *accord Ahearn v. Lewis Café, Inc.*, 308 S.W.3d 294, 297 (Mo.App.2010).

■ "In general, a claimant bears the burden of demonstrating that [she] is entitled to unemployment benefits; however, when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove misconduct connected to work." *Rush v. Kimco Corp.*, 338 S.W.3d 407, 411 (Mo. App.2011); *accord Hoover v. Cmty. Blood Ctr.*, 153 S.W.3d 9, 13 (Mo.App.2005). As a result, Hudson had the burden of proving by a preponderance of the evidence that Ms. Fendler was fired for misconduct. *Hoover*, 153 S.W.3d at 13; *Ahearn*, 308 S.W.3d at 297.

### III. THE COMMISSION'S DETERMINATION THAT MS. FENDLER DELIBERATELY VIOLATED HER SUPERVISOR'S INSTRUCTIONS WAS SUPPORTED BY COMPETENT AND SUBSTANTIAL EVIDENCE

■ The purpose of unemployment benefits is to provide financial assistance to people who are unemployed through no fault of their own. *See § 288.020.1.*[4] As a result, unemployment benefits are restricted if an employee is fired for misconduct. *See § 288.050.2.* Section 288.030.1(23), RSMo Supp.2005, defines "misconduct" as:

[A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

Ms. Fendler claims that the record supports only a finding that she acted negligently, not willfully. Therefore, she argues, the commission erred in finding that she engaged in misconduct because negligence cannot support a finding of misconduct. Her argument fails for two reasons.

■ First, even had the record not supported the commission's finding that Ms. Fendler's conduct was willful, that would not preclude a finding of misconduct. Although Ms. Fendler is right that simple negligence cannot support a finding of misconduct, *Yellow Freight Sys. v. Thomas*, 987 S.W.2d 1, 4 (Mo.App.1998), section 288.030 defines "misconduct" to include not just a willful violation of the employer's rules but also "negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." *§ 288.030.* Therefore, an employee may engage in misconduct under the statute by repeatedly choosing to act

4. Section 288.020 states in relevant part:

As a guide to the interpretation and application of this law, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to health, morals, and welfare of the people of this state resulting in a public calamity. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for compulsory setting aside of unemployment reserves *to be used for the benefit of persons unemployed through no fault of their own.* (emphasis added).

in what amounts to reckless disregard of the employer's rules or of the employee's duties or obligations. *See, e.g., Rush,* 338 S.W.3d at 411–12 ("there is a *degree* of negligence that [section 288.030] explicitly recognizes as 'misconduct'") (emphasis in original); *Spain v. R & L Carriers Shared Serv.,* 361 S.W.3d 433, 440 (Mo.App.2011), quoting *§ 288.030* ("Under [section 288.030], misconduct may be established where there is 'negligence in such degree or recurrence as to manifest culpability, ... or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer'") (alteration in original).

█ Second, the record as a whole supports the commission's conclusion that Ms. Fendler's "repeated failure to comply with explicit instructions takes her conduct outside the realm of mere mistakes or poor work performance and into the realm of insubordination." And, as the commission found, an employee's repeated violation of a known, understood and reasonable work rule, in and of itself, can provide competent and substantial evidence that the employee willfully or deliberately violated the rule.

*Freeman v. Gary Glass & Mirror, LLC,* 276 S.W.3d 388 (Mo.App.2009), provides a good example. After performing satisfactorily for three and one-half years, the employee's performance declined abruptly. *Id.* at 389. He was fired after he recommended a product to a customer after being told not to do so, improperly installed doors on two separate occasions, turned away a job the company could have performed and failed to double check the measurements of a mirror as instructed by his supervisor. *Id.* at 389–90. *Freeman* found that competent and substantial evidence supported the commission's conclusion that the employee deliberately violated his employer's instructions, stating "repeated failure to follow the Employer's specific instructions, without any explanation, after demonstrating his ability to do so over a long period of time, speaks just as loudly about the willfulness of Claimant's actions as [does a] ... verbal refusal [to follow instructions]." *Id.* at 393; *accord Hurlbut v. Labor and Indus. Relations Comm'n,* 761 S.W.2d 282, 285 (Mo.App.1988).[5]

Similarly, in *Moore v. Swisher Mower and Mach. Co., Inc.,* 49 S.W.3d 731 (Mo.App.2001), an employee who was arrested for assault and held in jail for three days failed to contact his employer to explain his absence. *Id.* at 734. He was fired not because of the arrest but because his failure to call his employer violated an absentee policy requiring employees to call in each day if they were going to be absent. *Id.* at 738. He claimed the commission erred in denying his claim for unemployment benefits in that his failure to call his employer was simply bad judgment. *Id.* at 738–40. The appeals court affirmed, holding that the fact that he knew about his employer's absentee policy and could have complied with it but chose not to do so on three consecutive days justified the finding of misconduct. *Id.*

Here, the facts supporting the judgment are stronger than those found sufficient to show willful disregard of an employer's instructions or rules in *Freeman* and *Moore.* Ms. Fendler violated her employer's instructions on at least 11 different

---

**5.** Ms. Fendler's suggestion that she had to tell her supervisor directly that she was choosing to disobey the supervisor's directions in order to be found to have willfully violated a work rule or engaged in insubordination is without merit. *See, e.g., Freeman v. Gary Glass & Mirror, LLC,* 276 S.W.3d 388, 393 (Mo.App. 2009); *Hurlbut v. Labor and Indus. Relations Comm'n,* 761 S.W.2d 282, 285 (Mo.App. 1988).

occasions after receiving a third and formal warning not to do so again. Further, she admitted that she knew Ms. Meister wanted her to enter exact start and end times; she knew how to do so and would have done so if she knew her job was in jeopardy. This shows that her failure to follow Ms. Meister's instructions was not the result of negligence or poor judgment but a deliberate choice to disregard the instructions.

Ms. Fendler implies that she was entitled to a warning that she would be fired if she continued to disregard Ms. Meister's instructions, but the evidence shows that she was aware that the procedure was being used to verify hours so that accurate payroll records could be produced, and that is not a minor matter that she had no reason to think was important. In any event, she cites no precedent holding that an employee is entitled to a warning that she will be fired if she intentionally violates a reasonable work rule, and the cases cited above do not impose such a requirement.

The facts adduced in the proceedings provide competent and substantial evidence to support the commission's conclusion that Ms. Fendler engaged in misconduct by repeatedly and deliberately violating a reasonable, known and understood work rule.

## IV. CONCLUSION

For the foregoing reasons the commission's determination that Ms. Fendler was fired for misconduct is affirmed.

RUSSELL, BRECKENRIDGE, FISCHER and PRICE, JJ., and BYRN, Sp.J., concur.

TEITELMAN, C.J., dissents in separate opinion filed.

DRAPER, J., not participating.

RICHARD B. TEITELMAN, Chief Justice.

I respectfully dissent. The evidence in this case establishes that Ms. Fendler was warned three times that she needed to enter specific start and end times for each employee. The evidence also shows that Ms. Fendler failed repeatedly to follow her supervisor's instructions to verify payroll by entering specific start and end times for each employee. However, the evidence fails to show that Ms. Fendler's actions constituted a deliberate disregard of her employer's interests so as to qualify as "misconduct" disqualifying her from receiving unemployment benefits.

As the principal opinion notes, the determination of whether an employee engaged in misconduct is a question of law. Appellate courts are not bound by the commission's conclusions of law or its application of the law to the facts. *Korkutovic v. Gamel Co.*, 284 S.W.3d 653, 656 (Mo.App. 2009). Moreover, this Court's review of whether the record establishes misconduct must be guided by the legislature's mandate that the unemployment security law "shall be liberally construed to accomplish its purpose to promote employment security ... by providing compensation to individuals in respect to their unemployment." Section 288.020.2. This means that "[d]isqualifying provisions are construed strictly against the disallowance of benefits." *St. John's Mercy Health System v. Div. of Employment Sec.*, 273 S.W.3d 510, 514 (Mo. banc 2009).

In this case, a strict construction of the term "misconduct" leads to the conclusion that the commission erred in denying Ms. Fendler unemployment compensation benefits. Although it is undisputed that Ms. Fendler failed to execute her employer's directive to verify payroll by entering specific start and end times for each employ-

**592**

ee, it is also true that there is no evidence directly supporting a finding that Ms. Fendler's conduct was willful as opposed to negligent. Instead, the conclusion that Ms. Fendler engaged in willful misconduct is really an inference drawn from the fact that Ms. Fendler failed repeatedly to verify payroll according to her supervisor's instructions. "While the violation of an employer's reasonable work rule can constitute misconduct, *Moore v. Swisher Mower & Machine Co., Inc.*, 49 S.W.3d 731, 740 (Mo.App.2001), there is a 'vast distinction' between conduct that would justify an employer in terminating an employee and conduct that is misconduct for purposes of denying unemployment benefits, *Pemiscot County Memorial Hospital v. Missouri Labor and Industrial Relations Commission*, 897 S.W.2d 222, 226 (Mo.App.1995)." *Williams v. Enterprise Rent–A–Car Shared Servs., LLC*, 297 S.W.3d 139, 144 (Mo.App.2009). Consequently, Ms. Fendler's failure to follow her supervisor's instructions does not necessarily provide a basis for disqualifying her from receiving unemployment benefits. *See*, e.g., *Duncan v. Accent Marketing, LLC*, 328 S.W.3d 488 (Mo.App.2010)(failure to follow repeated warnings did not establish misconduct); *Frisella v. Deuster Elec. Inc.*, 269 S.W.3d 895, 899 (Mo.App.2008)(failure to follow employer's instructions did not constitute evidence of willful misconduct).

Instead of drawing a disputed inference in favor of the employer, I would apply the rule of strict construction required by section 228.020.2 and hold that the facts of this case demonstrate that Ms. Fendler was negligent and that the commission erred in concluding that she engaged in willful misconduct that disqualified her from receiving unemployment compensation benefits.

The commission's decision should be reversed.