**Lonnie HALKMON, Appellant,**

v.

**NATIONAL ARCHIVES & RECORDS ADMINISTRATION**

and

**Division of Employment Security, Respondents.**

**No. ED 99494.**

Missouri Court of Appeals, Eastern District, Division Five.

Aug. 20, 2013.

John J. Ammann, Ashley N. Schawang, St. Louis, MO, for appellant.

Ninion S. Riley, Jefferson City, MO, for respondents.

GARY M. GAERTNER JR., Judge.

### Introduction

Lonnie Halkmon (Claimant) appeals a decision by the Labor and Industrial Relations Commission (Commission) denying Claimant unemployment benefits. Claimant argues the Commission's conclusion that he was terminated due to misconduct connected with work was unsupported by substantial and competent evidence on the whole record. We affirm.

### Background

In 2005, Claimant began working for the federal National Archives and Records Administration (Employer), which houses military records for veterans who served in the military and have been discharged or are deceased. Claimant worked as an Archives Aide, and his responsibilities were to re-file records that had been pulled from the shelves and to "interfile late flowing documents" that came from other departments to be inserted into veterans' records.

In 2012, Employer conducted an audit of its employees' work, specifically of their performances on interfiling, covering the time period between March 28 and July 10, 2012. The audit revealed that of the 1,207 files assigned to Claimant during that time period, 856 of them had been misfiled.

This reflected an inaccuracy rate of 71 percent. Forty other employees were audited at the same time. Although five of them also had what the Employer determined as disproportionate percentages of missing files, Claimant's inaccuracy rate was the highest.[1] The remaining employees audited had an average inaccuracy rate of three percent.

On July 16, 2012, Employer informed Claimant that it was terminating his employment. Employer gave Claimant the option of resigning rather than having his record reflect a termination, and Claimant exercised that option. Claimant then filed for unemployment benefits, and the Deputy initially considering his claim granted benefits because Employer did not provide evidence to substantiate its assertion that Claimant was terminated for misconduct connected with work.

Employer appealed and presented the following evidence at a telephone hearing before an Appeals Referee. Employer testified that Claimant had been trained in filing documents and had previously demonstrated an ability to do so. Employer also testified that because of an incentive program through which employees could earn bonuses if they completed higher numbers of filings, some employees had taken to engaging in a practice called "stashing." Stashing occurred when employees would deliberately file several different veterans' records together in one veteran's file, so as to finish assigned filings more quickly. Employer stated that because the facility housed over 70 million files, locating the misfiled records is very difficult, and there is a chance they may never be found. Employer believed

---

1. Each of the employees with disproportionate percentages of missing files received the same disciplinary action as Claimant.

Claimant's high inaccuracy rate indicated he was stashing files.

Claimant testified that he had never engaged in stashing. He said that he had not been trained during the previous year or two. He testified he knew how to put records in boxes, but he did not know about interfiles. He also stated that he believed the fact that he had filed a complaint against his supervisor meant his supervisor "had it out for [him]."

The Appeals Tribunal found that Claimant's testimony regarding his lack of training was not credible. The Tribunal found Claimant knew and understood the importance of properly filing records, he deliberately and intentionally chose to incorrectly file 71 percent of his assigned records, and such misfilings were not the result of mistake or ignorance. The Appeals Tribunal concluded that Claimant's conduct amounted to statutory misconduct, and they reversed the decision of the Deputy granting benefits. Claimant appealed to the Commission, which found the Appeals Tribunal's decision was supported by competent and substantial evidence on the whole record and was in accordance with applicable law. This appeal follows.

### Standard of Review

■ We defer to the Commission's findings of fact where they are supported by substantial and competent evidence on the whole record. *Comeaux v. Convergys Customer Mgmt. Group, Inc.*, 310 S.W.3d 759, 762 (Mo.App. E.D.2010) (citing *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003)). We review questions of law *de novo*. *Comeaux*, 310 S.W.3d at 762. Whether the facts support the Commission's conclusion that Claimant's conduct constituted statutory misconduct is a question of law. *Id.* (citing *Frisella v. Deuster Elec., Inc.*, 269 S.W.3d 895, 898 (Mo.App. E.D.2008)).

### Discussion

Claimant's sole point on appeal is that the Commission erred in concluding his conduct amounted to statutory misconduct, and thus the Commission erred in denying Claimant benefits. Claimant argues there was insufficient evidence that the misfiling was willful and that his conduct rather amounted simply to poor workmanship. We disagree.

■ Generally, a claimant seeking unemployment benefits has the burden of showing that he or she is entitled to them. *Croy v. Div. of Employment Sec.*, 187 S.W.3d 888, 892 (Mo.App. S.D.2006). However, when the employer claims that benefits should be denied because of termination based on statutory misconduct, the burden is on the employer to show misconduct connected with work by a preponderance of the evidence. *Id.* The state of Missouri defines "misconduct" as follows:

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

Section 288.030(23), RSMo. (Supp.2012). Generally, to show misconduct under this section, an employer must show that the employee "willfully violate[d] the rules or standards of the employer." *Rush v. Kimco Corp.*, 338 S.W.3d 407, 411 (Mo.App. W.D.2011).

■ Prior decisions make clear that poor workmanship or poor judgment alone,

without such evidence of intent, do not meet the definition of misconduct. *See Frisella*, 269 S.W.3d at 899 ("whether an employer has solid grounds to terminate an employee is not the same issue as whether the former employee qualifies for compensation") (quoting *Miller v. Kansas City Station Corp.*, 996 S.W.2d 120, 124 (Mo.App. W.D.1999)). Likewise, simple negligence regarding an employee's duties is not misconduct. *Fendler v. Hudson Servs.*, 370 S.W.3d 585, 589 (Mo. banc 2012).

■■ However, the statute does recognize a degree of negligence that can amount to the requisite wrongful intent required to find misconduct. *See* Section 288.030(23). For example, repeated negligent violations of a rule can constitute misconduct. *See Fendler*, 370 S.W.3d at 590 ("an employee may engage in misconduct under the statute by repeatedly choosing to act in what amounts to reckless disregard of the employer's rules or of the employee's duties or obligations"). Additionally, an employee's actions are more likely misconduct rather than simple negligence or poor judgment where that employee has demonstrated a prior ability to perform the tasks requested of the employer. *See Freeman v. Gary Glass & Mirror, L.L.C.*, 276 S.W.3d 388, 393 (Mo. App. S.D.2009) (finding misconduct where claimant repeatedly failed to follow specific directions, without explanation, after demonstrating ability to do so over long period of time). Finally, the degree of importance associated with the rule violated is a factor in determining the degree of the employee's disregard and whether it constitutes misconduct. *See Rush*, 338

S.W.3d at 411 (requiring employer to show violation of a work rule of significant import to constitute misconduct); *accord Wright v. Casey's Mktg. Co.*, 326 S.W.3d 884, 890 (Mo.App. W.D.2010) (stating nothing in precedent indicates single violation of important policy cannot constitute misconduct).

■■ Here, the Commission found that Claimant previously had been trained to file documents and that he understood the importance of doing so correctly. This finding is supported by Employer's testimony that Claimant had been trained and had demonstrated a prior ability to complete assigned tasks. Additionally, this finding is supported by Claimant's own testimony that he had not been trained in the previous year or two, implying he had been trained sometime prior to that during his seven years of employment.[2] Employer had conducted previous audits of Claimant's work, none of which resulted in termination. Even if Claimant did not deliberately engage in stashing during 2012, the fact that he misfiled 71 percent of his assigned records over a four-month time period, after previously demonstrating ability to perform filing tasks, indicates such a degree of negligence amounting to more than simply poor workmanship or an inability to do the job. *See Fendler*, 370 S.W.3d at 589 (stating even if record does not support finding conduct was willful, does not preclude finding of misconduct where evidence of repeated reckless disregard of employee's duties). Furthermore, the importance of correctly filing veterans' records so as to ensure proper handling of their claims along with the great difficulty in locating missing files were established

**2.** While there is no explanation of the precise difference between re-filing and interfiling, or whether Claimant's training was for filing in general or specific to each type of filing, it is reasonable to infer from the descriptions in the record that both types of filing required the same primary skill of placing files or records in their proper locations according to a uniform system of organization.

in the record and indicate the gravity of the consequences of Claimant's violations.

These facts distinguish Claimant's case from those upon which he relies on appeal. The Commission specifically found Claimant's testimony that he did not know how to interfile was not credible, and the Commission also found his actions were deliberate. *Contra Duncan v. Accent Mktg., LLC,* 328 S.W.3d 488, 492–93 (Mo.App. E.D.2010) (Commission made no findings regarding intent). In *Bolden v. Cura, Inc.,* this Court found that the record did not support a conclusion that the claimant was trained regarding the specific violation, because it was unclear from the record that the employer's policies addressed that violation. 350 S.W.3d 878, 881 (Mo. App. E.D.2011). In contrast here, the Commission disbelieved Claimant's testimony that he was not trained, and Employer testified he had been trained and demonstrated past ability. The Commission was free to believe Employer, and thus its finding regarding Claimant's knowledge of proper filing procedures was supported by competent and substantial evidence. Similarly, these facts distinguish Claimant's case from those where the claimants simply do not have the ability to complete assigned tasks and therefore have not committed misconduct. *See Frisella,* 269 S.W.3d at 897, 900 (finding no misconduct where employee was slow with work, did not understand assigned tasks, and no evidence employee intentionally committed errors).

Finally, Claimant argues there was no direct evidence that Claimant intentionally misfiled his assigned records, as in *Hoover v. Community Blood Center,* 153 S.W.3d 9 (Mo.App. W.D.2005) (finding no evidence that claimant's negligent omissions in procedure and earnest statements to patient were willful rather than poor judgment); and in contrast to *Fendler v. Hudson Ser-*

*vices,* where the employee had received several specific warnings, ignored them, and admitted that she would not have done so if she knew it would put her job in jeopardy. 370 S.W.3d at 590–91. Claimant argues the lack of direct evidence of willfulness means the record does not support a conclusion of misconduct; however, Claimant points to no case specifically requiring direct evidence of willfulness to find misconduct. In fact, courts have implied willful misconduct simply based on an employee's violations. *See Freeman,* 276 S.W.3d at 393 (finding repeated failures to follow instructions under circumstances there "sp[oke] just as loudly about the willfulness of [c]laimant's actions as [a] . . . verbal refusal [to follow instructions]"), *cited with approval in Fendler,* 370 S.W.3d at 590.

In sum, the Commission's factual findings were supported by competent and substantial evidence on the whole record. The circumstances here included Claimant's 71 percent inaccuracy rate over a period of four months, his demonstrated ability to properly file records, his knowledge of the importance of proper filing to ensure proper handling of veterans' claims, and the fact that his proffered explanations for such mishandling were not credible. Even if the record did not support the Commission's finding of deliberate choices to misfile, it is clear that the nature of Claimant's repeated misfilings under the circumstances amounted at least to negligence in such degree and recurrence as to manifest culpability. *See* Section 288.030(23). Such action constitutes statutory misconduct connected with work. Point denied.

### Conclusion

The Commission's decision is supported by substantial and competent evidence,

and it is in accordance with applicable law. We affirm.

ROBERT M. CLAYTON III, C.J., and MICHAEL K. MULLEN, S.J., concur.