

# In the
# Missouri Court of Appeals
# Western District

MARK WAYNE,                          )
                                     )
            Appellant,               )    WD83132
                                     )
v.                                   )    OPINION FILED:  April 28, 2020
                                     )
DIVISION OF EMPLOYMENT               )
SECURITY,                            )
                                     )
            Respondent.              )

**Appeal from the Labor and Industrial Relations Commission**

Before Division Two:  Mark D. Pfeiffer, Presiding Judge, Alok Ahuja, Judge and
Gary D. Witt, Judge

Appellant Mark Wayne ("Wayne") appeals the decision of the Labor and Industrial Relations Commission, Division of Employment Security ("Commission") denying him unemployment benefits.  Wayne raises three points on appeal suggesting that there was insufficient evidence to support a finding that he was discharged for misconduct and therefore ineligible for benefits.  We reverse and remand.

**Factual and Procedural Background**

Wayne worked for Estes Express Lines Corporation ("Estes") for over seventeen years as a loader and dock worker. He was terminated for poor job performance on May 17, 2019. At the time of his termination, he was working as a loader operating a forklift loading freight onto trucks. In the three months preceding his termination, he received four Notices of Written Warning:

- On March 27, 2019, Wayne received a written warning for stacking freight on freight. Estes instructed him to follow proper loading procedures including to use the tools and to block-brace, wrap, and strap the freight. He was suspended for two days.

- On April 17, 2019, he received a written warning for failure to use captive beams when loading freight and for standing on the end of the "arrowshed." He was again instructed to follow the proper procedures and to block-brace, wrap, and strap the freight.

- On April 17, 2019, he received a separate written warning for putting the forks of his forklift into a 50-gallon drum of hazmat material. He was sent home for the day.

- On May 1, 2019, Wayne received a written warning for loading pallets on top of skid bags causing damage to the bags. He failed to use the captive beams to load the freight and it had to be reloaded.

2

(collectively, "Written Warnings"). Approximately two weeks later he was terminated when he "mixed up" some numbers and the freight was loaded "to [sic] high".[1]

Following his termination, Wayne sought unemployment benefits. Estes protested Wayne's claim because Estes alleged Wayne violated the company's Code of Conduct Policy ("Code of Conduct") against "Insubordination--or failure to follow a supervisor's instructions, including the failure to observe supervisory rules, practices, failure to perform jobs assigned and/or functions of your job" ("Protest Letter"). Specifically, the Protest Letter outlined and attached the above Written Warnings. It also noted that Wayne had received Estes's Code of Conduct and it is otherwise posted in the employee breakroom and "throughout the terminal." Estes asserted that employees are aware that they may be discharged for even one violation of the company rules.

A Deputy with the Division of Employment Security Division ("Division") issued its denial of Wayne's claim, finding that he was discharged for "misconduct connected with work." Specifically, that Wayne "incorrectly loaded pallets resulting in damage to the product and loss for the customer. The claimant disregarded strict freight handling procedures." Wayne appealed this decision. A telephone hearing was held before the Appeals Tribunal of the Division ("Appeals Tribunal") on July 15, 2019 ("Hearing"). At the Hearing, Estes representative testified regarding Wayne's prior Written Warnings and stated the only reason given to Wayne at the time of his discharge was that he was being dismissed for "poor performance." Wayne testified that immediately prior to his discharge

---

[1] Nowhere in the record is there an explanation of how the mix up of the numbers impacted Wayne's job performance that day.

3

he had incorrectly loaded a "gold medal" shipment--a shipment with a guaranteed delivery date. He testified that he had "two (unintelligible) numbers off by one" and he "mixed . . . up" the shipment. Wayne testified that he was told this was the reason for his dismissal.

On July 19, 2019, the Appeals Tribunal issued its decision finding that the testimony of the witness for Estes was persuasive despite contradictory testimony from Wayne. Specifically, the Appeals Tribunal found that Wayne was aware of the Code of Conduct and that he could be discharged for poor job performance and failure to perform up to acceptable standards. The Appeals Tribunal found that there was substantial evidence to find that Wayne was discharged for "misconduct," as defined by section 288.030.1(23), because he was aware of the company's policy regarding job performance and yet had multiple incidents of poor work performance in which he admitted fault.

Wayne appealed the Appeals Tribunal's determination to the Commission. The Appeals Tribunal's decision was affirmed and adopted by the Commission by a vote of two commissioners to one ("Award"). Commissioner Chick filed a Dissenting Opinion ("Dissent"). The Dissent found that Wayne's testimony, that he did the best he could to load the freight, was credible. Therefore, the Dissent found that Wayne's conduct was merely a mistake that "demonstrated bad judgment" and, therefore, did not rise to the level of statutory misconduct.

This appeal followed.

## Standard of Review

We review the Commission's decision to determine whether it is "supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, § 18. We must affirm the Commission's decision unless (1) the

4

Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) the record lacks sufficient competent evidence to support the award. § 288.210.

*Norath v. Div. of Emp't Sec.*, 490 S.W.3d 792, 794 (Mo. App. E.D. 2016). "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). "This Court defers to the Commission on issues involving the credibility of witnesses and the weight given to testimony." *Johnson v. Denton Constr. Co.*, 911 S.W.2d 286, 288 (Mo. banc 1995). We need not view "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award." *Hampton*, 121 S.W.3d at 223. "Whether the Commission's findings support the conclusion that a claimant engaged in misconduct connected with his or her work is a question of law," to be reviewed *de novo*. *Fendler v. Hudson Servs.*, 370 S.W.3d 585, 589 (Mo. banc 2012) (internal citation omitted).

## Discussion

Wayne raises three points on appeal: (1) there was insufficient evidence to support a finding that he received the 2010 version of the Code of Conduct relied on by the Commission; (2) Estes contributed to his emotional distress that impeded his ability to think clearly by assigning him different jobs, failing to have proper materials and tools,

and putting him in fear of losing his job; and (3) the Commission's Award is not supported by substantial evidence.[2]

As the Commission notes, "[a] claimant cannot litigate on appeal an issue that was appropriate for, but not addressed by, the Commission." *Adams v. Div. of Emp't Sec.*, 353 S.W.3d 668, 673 (Mo. App. E.D. 2011). "'This [c]ourt may only address issues that were determined by the Commission and may not consider issues not before the Commission.'" *Id.* (quoting *Perry v. Tiersma*, 148 S.W.3d 833, 835 (Mo. App. S.D. 2004)). The issues raised by Wayne to the Commission were that there were "discrepancies" in the "job performance, responsibilities, and available materials needed" to complete his position of loader. Additionally, that his employer did not properly instruct him how to do his job without proper tools or equipment and other employees who did not use the proper tools or equipment were not given written warnings. He also contended that "the rules are not fairly and consistently enforced" in that "[o]ther workers, dock workers and loaders have to operate with absence of equipment and tools on a day to day basis loading as they can, but they are spared write-ups." Wayne's first point on appeal, that there is no evidence he received the Code of Conduct, was not raised before the Commission and thus is waived on appeal. We find, however, that his second and third arguments, when taken together,

---

[2] In its brief the Commission asks that Wayne's brief be stricken for failure to comply with Missouri Supreme Court Rule 84.04(d)(2)(c) which provides the outline for how a Point Relied On must be drafted. The requirements of Rule 84.04 are mandatory and failure to comply with the rule is grounds for dismissal. *Hankins v. Reliance Auto., Inc.*, 312 S.W.3d 491 (Mo. App. E.D. 2010). "This is to ensure that appellate courts do not become advocates by speculating on facts and arguments that have not been asserted." *Pearson v. Keystone Temp. Assignment Grp., Inc.*, 588 S.W.3d 546, 550 (Mo. App. E.D. 2019). Although Wayne's points on appeal fail to follow the "roadmap" established by Rule 84.04(d)(2)(c), they are clear as to the arguments raised. As such, because we prefer to decide cases on the merits and we can sufficiently ascertain Wayne's argument to provide meaningful review without becoming an advocate, we exercise such a review in our discretion.

properly raise a claim that there was not substantial evidence to support a finding of misconduct because he did not have proper tools or equipment and his poor performance did not rise to the level of misconduct, was argued to the Commission and is proper for this Court to consider on appeal.

Under section 288.050.2, if the Division finds that a claimant "has been discharged for misconduct connected with the claimant's work, such claimant shall be disqualified for waiting week credit and benefits . . . ." Section 288.030.1(23) defines "misconduct," in relevant part, as:

> conduct or failure to act in a manner that is connected with work, regardless of whether such conduct or failure to act occurs at the workplace or during work hours, which shall include:
>
> (a) Conduct or a failure to act demonstrating knowing disregard of the employer's interest or a knowing violation of the standards which the employer expects of his or her employee;
>
> (b) Conduct or a failure to act demonstrating carelessness or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or a knowing disregard of the employer's interest or of the employee's duties and obligations to the employer;
>
> . . . .
>
> (e) A violation of an employer's rule, unless the employee can demonstrate that:
>
> a. He or she did not know, and could not reasonably know, of the rule's requirements;
>
> b. The rule is not lawful; or
>
> c. The rule is not fairly or consistently enforced[.]

7

In its Protest Letter, Estes asserted that Wayne had been terminated for violation of the Code of Conduct prohibiting "insubordination," which included "failure to follow a supervisor's instructions, including the failure to observe supervisory rules, practices, failure to perform jobs assigned and/or functions of your job." The Deputy's determination denied benefits finding that Wayne "disregarded strict freight handling procedures" when he incorrectly loaded freight, resulting in damage to the customer's product.

The Commission, in adopting the decision of the Appeals Tribunal relied on Estes's rule in its Code of Conduct prohibiting "poor performance" which is defined within the Code as "failure to perform to acceptable standards." Although not specifically cited, it is clear that the Commission found that Wayne was prohibited from receiving benefits because he committed misconduct pursuant to section 288.030.1(23)(e).[3] The Award found that his poor performance constituted misconduct as a violation of the employer's policy and that Wayne did not demonstrate that he fell within one of the exceptions to section 288.030.1(23)(e)a-c.

Missouri courts have made clear that there is a distinction "between conduct that justifies termination and misconduct that precludes benefits[.]" *Valley v. Div. of Emp't Sec.*, 578 S.W.3d 865, 871 (Mo. App. W.D. 2019). "[S]imple acts of negligence, accidents and mistakes, bad judgment, or poor workmanship do not rise to the level of scienter required to constitute disqualifying misconduct." *Wilson v. Progressive Waste Sols. of*

---

[3] The Award notes that Wayne violated his "employer's policy" and states that: "Claimant admitted that he knew of the rule. The rule is not unlawful. Claimant failed to allege or show that the rule was not fairly or consistently enforced." Clearly indicating that Wayne did not fall within the exceptions of section 288.030.1(23)(e)a-c.

*Mo., Inc.*, 515 S.W.3d 804, 808 (Mo. App. E.D. 2017). However, in 2014, the General Assembly added section 288.030.1(23)(e) to the definition of "misconduct." Subsection (e) is unique because "[u]nlike sections 288.030.1(23)(a) and (b), which require an employer to establish either a knowing or deliberate disregard of an employer's interest or standards, or carelessness or negligence of such a degree or recurrence as to manifest culpability or wrongful intent, section 288.030.1(23)(e) is devoid of any such requirement." *Con-Way Truckload, Inc. v. Wood*, 511 S.W.3d 478, 485 (Mo. App. W.D. 2017) (citing *Esquivel v. Hy-Vee, Inc.*, 498 S.W.3d 832, 836-37 (Mo. App. W.D. 2016)). It also differs from sections 288.030.1(23)(a) and (b) in that, once an employer demonstrates that the employee violated an employer's rule, "the burden shifts to the employee to demonstrate a statutory excuse that operates to remove the rule violation from the definition of misconduct." *Esquivel*, 498 S.W.3d at 836. Missouri courts have yet to address whether an employer may make a rule against mistakes, accidents, poor workmanship or bad judgment--acts otherwise not disqualifying under section 288.030.1(23)(a) and (b)--and eliminate a substantial segment of employees who would be otherwise entitled to benefits. Such is the question before this court when reviewing Estes's rule against "poor performance."

The legislature created a clear guide by which Missouri courts are to interpret the provisions of the Missouri Employment Security Law which provides unemployment benefits to Missourians.

> 1. As a guide to the interpretation and application of this law, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to health, morals, and welfare of the

9

people of this state resulting in a public calamity. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

2. This law shall be *liberally construed* to accomplish its purpose to promote employment security both by increasing opportunities for jobs through the maintenance of a system of public employment offices and by providing for the payment of compensation to individuals in respect to their unemployment.

Section 288.020 (emphasis added). "Disqualifying provisions of the unemployment compensation law are to be construed against the disallowance of benefits to unemployed but available workers." *Scrivener Oil Co. v. Crider*, 304 S.W.3d 261, 268 (Mo. App. S.D. 2010); *Mo. Div. of Emp't Sec. v. Labor & Indus. Relations Comm'n of Mo.*, 651 S.W.2d 145, 148 (Mo. banc 1983).

There has been very little case law interpreting the bounds of subsection (e). *Con-Way Truckload, Inc.*, 511 S.W.3d at 486. In *Con-Way Truckload, Inc.*, the alleged rule violation was a prohibition against "[o]verturning the assigned tractor or trailer." *Id.* at 481. The Court found that the Commission properly found that overturning his trailer by taking a highway entrance ramp at a greater rate of speed than was safe was an act of negligence and poor judgment and not misconduct pursuant to sections 288.030.1(23)(a) and (b). *Id.* at 484-85. The Court, however, remanded for the Commission to determine whether the driver was disqualified from receiving benefits because he violated an employer's rule under section 288.030.1(23)(e)—a determination the Commission had failed to make. *Id.* at 487.

10

In *Esquivel*, this Court considered a violation of the employer's rule against "[v]erbal or physical abuse of a customer or employee, the use of vulgarity or any misconduct around customers or employees." *Esquivel*, 498 S.W.3d at 834. The employee admitted to using profanity in the workplace which was overheard by fellow employees and a customer. *Id.* The employee was denied benefits and on appeal, alleged that her use of profanity was merely a minor violation and that it was not knowing or deliberate. *Id.* at 836. This Court found that the plain language of section 288.030.1(23)(e) does not allow for "minor" violations to be treated differently nor does it allow for a consideration of intent. *Id.* at 836. The Court specifically noted that:

> The 2014 amendment to section 288.030.1(23)'s definition of 'misconduct,' which eliminated the requirement that a rule violation be deliberate, must be given effect. "When the legislature amends a statute, it is presumed that its intent was to bring about some change in the existing law." *Kolar v. First Student, Inc.*, 470 S.W.3d 770, 777 (Mo. App. E.D. 2015). It is thus irrelevant whether [employee's] admitted violation of [employer's] rule was deliberate, except insofar as such evidence might tend to establish that the employee did not know of the rule.

*Id*. at 837.

*Esquivel* and *Con-Way Truckload, Inc.* are distinguishable from this case because they involved company rules that were specific in nature. They barred particular and well-defined acts. *See also Jackson v. Walgreen Co.*, 516 S.W.3d 391, 392-93 (Mo. App. E.D. 2017) (employee terminated for violation of employer rule against "online harassment, discrimination or bullying," including "sexual innuendos," for posting a pornographic video to a male coworker's Facebook page and referencing fellow female coworkers in the

11

post); *Dortch v. Zoltek Corp.*, 493 S.W.3d 18, 19 (Mo. App. E.D. 2016) (employee terminated for refusal to comply with employer's rule regarding drug testing).

In this case, Estes's rule merely barred "poor performance" defined as "failure to perform to acceptable standards." This rule offers no guidance to employees as to what actions or conduct to take or avoid. It merely informs employees that they must perform their job to the subjective standards of the employer whether or not those standards are clearly defined to an employee. By its very nature, such a broad rule acts as a virtual absolute bar for recovery of benefits in contradiction to the declared purpose of the Missouri Employment Security Law, as specifically stated by the legislature in section 288.020. Such a rule requires perfect performance by Missouri employees or they are subject to total loss of benefits upon termination. Additionally, it does not adequately inform employees of the conduct required to be in compliance. As noted by the court in *Esquivel*, if the rule bars something as subjective as "poor performance" it is unclear that an employee could ever understand the conduct required or barred by the rule. By the same token, we doubt that such a rule could ever meet the requirement of being "fairly" and "consistently enforced."

We will not interpret section 288.030.1(23)(e) in such a manner as to run contrary to the General Assembly's stated purpose and against a clear mandate for liberal construction to benefit displaced workers. Section 288.030.1(23)(e) has the purpose and intent in allowing employers to promulgate clear rules that guide employees conduct and to deny benefits to employees who violate such rules. At that point, the employee's conduct is no longer "through no fault of their own." These rules, however, must prohibit or require

12

specific and well-defined conduct such that an employee can conform to those rules. A general rule merely prohibiting "poor performance" is too broad and would allow the denial of benefits to an employee for a mistake or bad judgment that did not rise to the level of "fault."

The Commission erred in finding that Wayne was disqualified from receiving unemployment benefits because he violated Estes's rule against poor performance. This case, however, is also unusual because the basis for the Appeals Tribunal's decision, which was later adopted by the Commission, was not the basis Estes gave for Wayne's termination. In its Protest Letter, Estes stated that Wayne was terminated for violation of the company's rule against "insubordination" defined as "failure to follow company rules, policies, procedures or supervisor's instructions." The Protest Letter then outlined Wayne's four Written Warnings in which he was reprimanded for failure to follow company procedure regarding the loading of freight by failing to use proper tools and equipment or stacking freight.

A similar discrepancy occurred in *Evans v. Division of Employment Security*, 354 S.W.3d 220 (Mo. App. W.D. 2011). In *Evans*, the Commission found that the "[employee] had been discharged for misconduct for failing to timely call his supervisor concerning the difficulties he was experiencing at the [apartment he was managing for employer.]" *Id*. at 226. This was not, however, the employer's given reason for termination and thus the Commission's finding was "wholly unsupported by the record" and was reversed. *Id*. at 226-27. Yet, in *Evans* this Court went on to consider the basis the employer actually gave for dismissal and found that the Commission had made sufficient factual findings to

13

consider the stated reason for dismissal; the Court ultimately determined that the employee was not excluded from benefits on the basis which the employer asserted for dismissal. *Id.* at 227.

In this case, the Appeals Tribunal and the Commission denied Wayne benefits on the basis of his violation of Estes's rule against "poor performance" rather than Estes's stated reason for termination, "insubordination." Like *Evans*, we have before us sufficient factual findings upon which we can make a determination as to Wayne's eligibility for benefits.

Estes's stated reason for termination due to insubordination is also premised on a violation of a rule pursuant to of section 288.030.1(23)(e), but "insubordination" is more a defined and concrete rule under the employer's Code than the rule against "poor performance." Estes's rule against insubordination requires that the employee follow all "supervisory rules" and "practices" as well as "perform jobs assigned and/or functions of your job." Wayne's alleged insubordination stems from his failure to follow his supervisor's instructions as to how to properly load the freight. The only evidence of these instructions were the Written Warnings given to Wayne. In them, he was told to use "captive beams" and reminded to block, brace, wrap and strap the freight he was loading.

Estes presented no evidence regarding why Wayne was discharged except that it was for "poor performance." Wayne testified that he was discharged following an incident in which he "mixed up" a gold medal shipment. According to Wayne's testimony, he mixed up the shipment because of a numerical error. He admitted that he could have done "a better job" and his only admitted error in loading was that the freight was "to [sic] high."

14

To be a violation of Estes's rule against insubordination, there must be evidence that Wayne disregarded specific supervisory rules or practices or failed to perform his job as assigned.[4] Consistent with our discussion above, it is not sufficient that he was instructed to perform a job and he did so poorly. Wayne testified that he was discharged after he "mixed up" a gold medal shipment. Although he testified that he should have done "a better job" and that the freight was "to [sic] high," there is no evidence to suggest that any of the actions taken on this final shipment were a failure to follow "supervisory rules" and "practices" or a failure to perform the job assigned. The only evidence regarding specific instructions that Wayne received from his supervisor were the Written Warnings and there is no evidence supporting a finding that he failed to follow those directives or any correlation between the instructions given to him within those prior violations and the poor performance on the load for which he was terminated.

Although Wayne may have been discharged for cause because he performed his job poorly, there was insufficient evidence that his actions rose to the level of insubordination or misconduct which would support a finding of a denial of benefits. Therefore, we find that even under the reason stated by Estes for Wayne's dismissal, he was not ineligible from receiving unemployment benefits.

---

[4] The company rules provided by Estes are devoid of direct references to the use of captive beams or bracing for which Wayne was previously warned or the loading of the "gold medal" shipment which lead to his dismissal. Although the April 17 and May 1 written warnings both mention that Wayne failed to use captive beams when loading freight, there is nothing in the record which indicates that Wayne engaged in such conduct after he received the last written warning on May 1.

## Conclusion

The Commission erred in determining that Wayne was dismissed for violation of Estes's general rule against poor performance.  Further, there was insufficient evidence to support a finding that Wayne violated Estes's rule against insubordination.  As such, we reverse the Order of the Commission and this case is remanded for the Commission to enter an Order finding Wayne eligible for unemployment benefits.

_____
Gary D. Witt, Judge

All concur

16