

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| MARY RELIFORD, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD83154 |
| | ) | |
| DIVISION OF EMPLOYMENT | ) | FILED: November 17, 2020 |
| SECURITY, | ) | |
| Respondent. | ) | |

### Appeal from the Labor and Industrial Relations Commission

### Before Division Four: Cynthia L. Martin, C.J., and
### and Alok Ahuja and Edward R. Ardini, Jr., JJ.

Mary Reliford appeals from a Decision of the Labor and Industrial Relations Commission. The Commission found that Reliford was disqualified from receiving unemployment benefits because she had been discharged from her employment for misconduct, for violating her employer's attendance policy. Reliford argues that the Commission erred in disqualifying her from receiving benefits, because her employer failed to prove that her absenteeism was willful. Because her employer was not required to prove that Reliford willfully violated its attendance policy, we affirm the Commission's Decision.

### Factual Background

Reliford began working part-time at Wal-Mart as a fitting room associate on July 26, 2017. She last worked a shift at Wal-Mart on March 24, 2019. After not being scheduled to work for several weeks, Reliford called to speak to a supervisor in May 2019, and was told that she had been terminated for violating Wal-Mart's attendance policy.

Wal-Mart's attendance policy permitted a maximum of four-and-a-half "active occurrences" within a rolling six-month period, where one "occurrence" was equal to one absence from a scheduled shift. If an employee received more than four-and-a-half occurrences in a rolling six-month period, the employee was subject to termination. Reliford admitted that she was aware of this attendance policy at least since February 2019.

Reliford was absent from work on March 3, 6, 13, 20, and 27, 2019, each of which constituted a separate occurrence, for a total of five. She was terminated based on these absences.

After she learned in May 2019 that she had been terminated, Reliford applied for unemployment benefits. A Deputy in the Division of Employment Security initially found that Reliford was eligible for benefits.

Wal-Mart appealed the Deputy's decision. At the telephone hearing before the Division's Appeals Tribunal, Reliford claimed that several of her absences were due to circumstances beyond her control, including illness, car trouble, and severe weather.

On July 11, 2019, the Appeals Tribunal issued its decision, finding that Reliford was disqualified from receiving unemployment benefits because she had been terminated for misconduct. The Appeals Tribunal found that Wal-Mart's attendance policy "stated [that] employees could be discharged if they accumulated more than 4.5 attendance points in a rolling 6-month period," and that Reliford "was aware that employees could be discharged" for violating this policy. The Appeals Tribunal also found that that the attendance policy "did not provide for absences due to illness or injury." The Appeals Tribunal found that Reliford was absent on March 3, 6, 13, 20, and 27, 2019, accruing five points in a rolling six-month period. The Appeals Tribunal concluded that Reliford's five absences violated Wal-Mart's attendance policy, and justified her termination.

Reliford applied for review by the Commission. The Commission affirmed the Appeals Tribunal decision, and adopted it as its own.

Reliford appeals.

## Standard of Review

Reliford does not challenge the Commission's findings of fact. Instead, she argues that Wal-Mart failed to prove that she had committed misconduct, because the evidence did not establish that she willfully violated Wal-Mart's attendance policy. "Whether the Commission's findings support the conclusion that a claimant engaged in misconduct connected with his or her work is a question of law." *Fendler v. Hudson Servs.*, 370 S.W.3d 585, 589 (Mo. 2012) (citation and internal quotation marks omitted). We review questions of law *de novo*. *Id.* at 588-89.

## Discussion

Reliford argues that Wal-Mart was required to prove that she acted willfully in order to show that she was discharged for misconduct. She claims that many of her absences were not willful, but were instead due to circumstances beyond her control, and that her absenteeism therefore cannot constitute disqualifying "misconduct."

Under § 288.050.2, a claimant is disqualified from receiving unemployment benefits if the claimant "has been discharged for misconduct connected with the claimant's work."

> In general, a claimant bears the burden of demonstrating that she is entitled to unemployment benefits; however, when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove misconduct connected to work. As a result, [the employer] had the burden of proving by a preponderance of the evidence that [the employee] was fired for misconduct.

*Fendler*, 370 S.W.3d at 589.

Section 288.030.1(23) defines "misconduct" as

3

conduct or failure to act in a manner that is connected with work, . . . which shall include:

(a)     Conduct or a failure to act demonstrating knowing disregard of the employer's interest or a knowing violation of the standards which the employer expects of his or her employee;

(b)     Conduct or a failure to act demonstrating carelessness or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or a knowing disregard of the employer's interest or of the employee's duties and obligations to the employer;

(c)     A violation of an employer's no-call, no-show policy; ***chronic absenteeism or tardiness in violation of a known policy of the employer***; or two or more unapproved absences following a written reprimand or warning relating to an unapproved absence unless such absences are protected by law;

(d)     A knowing violation of a state standard or regulation by an employee of an employer licensed or certified by the state, which would cause the employer to be sanctioned or have its license or certification suspended or revoked; or

(e)     A violation of an employer's rule, unless the employee can demonstrate that:

a.     He or she did not know, and could not reasonably know, of the rule's requirements;

b.     The rule is not lawful; or

c.     The rule is not fairly or consistently enforced.

(Emphasis added.)

Reliford argues that Wal-Mart was required, but failed, to establish that she *willfully* violated the company's attendance policy. She relies on *Barnes v. Jasper Products, LLC*, 418 S.W.3d 530 (Mo. App. S.D. 2014), to support her argument. *Barnes* is distinguishable, however, because it applied an earlier version of the Employment Security Law, which defined "misconduct" to include a "deliberate violation of the employer's rules." *See* § 288.030.1(23), RSMo Cum. Supp. 2006. Relying on this earlier definition of "misconduct," *Barnes* held that an employee's absences did not constitute "misconduct," because the Commission had found that

4

most of the absences were "unavoidable," including for "family illness, car problems, [and] furnace repair." *Id.* at 537.

The General Assembly amended the definition of "misconduct" in 2014. S.B. 510, 97th General Assembly, 2d Regular Session (2014); *see Ausley v. CCL Label (St. Louis), Inc.*, 513 S.W.3d 390, 400 n.6 (Mo. App. E.D. 2017) (Odenwald, J., dissenting) (describing the 2014 amendment). The current version of the statute specifically defines misconduct to include a violation of an employer's attendance policy; it does not require that such violations be "willful" or "deliberate." Instead, the statute requires only that the employee's absences violate a "known policy." § 288.030.1(23)(c).

"As a result of the 2014 amendment to § 288.030.1(23), employers do not have a heavy burden to prove that an employee committed attendance-related misconduct." *Ausley*, 513 S.W.3d at 395. Unlike the pre-2014 definition of "misconduct," which required the employer to show that the employee *deliberately* violated the employer's rules, the current definition does not require that an employee act deliberately, intentionally, or willfully when violating the employer's attendance policy.

The definition of attendance-related misconduct in § 288.030.1(23)(c) contrasts with other aspects of the "misconduct" definition, which require that an employee "knowing[ly]" violate particular rules or standards, or act in a manner which "manifest[s] culpability [or] wrongful intent." § 288.030.1(23)(a), (b), (d). "'When different statutory terms are used in different subsections of a statute, appellate courts presume that the legislature intended the terms to have different meaning and effect.'" *MC Dev. Co. v. Central R-3 Sch. Dist.*, 299 S.W.3d 600, 605 (Mo. 2009) (quoting *Nelson v. Crane*, 187 S.W.3d 868, 870 (Mo. 2006)); *accord*, *McAlister v. Strohmeyer*, 395 S.W.3d 546, 552 (Mo. App. W.D. 2013*)*. Unlike the pre-2014 statute, and unlike other aspects of the current "misconduct" definition,

5

§ 288.030.1(23)(c) requires only that the employee have knowledge of the attendance policy which he or she has violated.

Besides absenteeism "in violation of a known policy," § 288.030.1(23)(c) also defines "[a] violation of an employer's no-call, no-show policy" as misconduct. In *Odom v. Glazer's Distributors of Missouri, Inc.*, 495 S.W.3d 833 (Mo. App. W.D. 2016), we rejected an employee's argument that he had not committed misconduct because he did not knowingly violate his employer's no-call, no-show policy. We explained:

> Odom argues that he did not knowingly disregard Glazer's interest because Glazer's vacation policy was confusing and he was unaware he needed to call in on a daily basis. Nowhere in the plain language of section 288.030.1(23)(c) is there a requirement that the Odom knowingly disregarded Glazer's no-call, no-show policy. It is enough, based on the plain language of section 288.030.1(23)(c), that Odom was aware of the policy.

*Id.* at 836.

The same reasoning applies here: it is enough that Reliford's five undisputed absences in March 2019 exceeded the number allowed by Wal-Mart's attendance policy, and that she was aware of that policy. Wal-Mart was not required to show that Reliford's violations of the attendance policy were knowing, willful, deliberate, or otherwise culpable.[1]

### Conclusion

We affirm the Decision of the Labor and Industrial Relations Commission.

Alok Ahuja, Judge

All concur.

---

[1]  Reliford has only argued on appeal that evidence of willfulness was legally required, but lacking. She has not argued that the evidence was insufficient to establish that her absenteeism was "chronic." Our opinion should not be read to address that issue.

6